39503. LANDERS et al. v. THE STATE.

SMITH, Justice.

We granted certiorari in order to review the Court of Appeals' decision in *Landers v. State,* 164 Ga. App. 657 (297 SE2d 748) (1982). The facts are as follows: The Paulding County Sheriff's Department executed a search warrant on the home of Eddie Campbell. According to the testimony of Detective T. W. Moore, who instigated the search, the warrant authorized a search of "[A] brick dwelling with tin shingles on the roof located on Cochran Ridge Road between Fleetwood and a dirt road of Hiram, Georgia." The warrant said nothing about any other structures, people, or vehicles on the premises, although Detective Moore testified that the judge who issued the warrant "told me I could search anything on that property."

Upon arrival at the Campbell residence, the officers were confronted with numerous vehicles both on the Campbell property and on property adjacent thereto. There were numerous people milling about the Campbell house and yard. Many of them fled upon discovering the presence of the officers. A search was made of the

Campbell residence, all persons present, and the vehicles on and off the Campbell property. According to police testimony, some drugs were found in the Campbell home. The record is unclear as to whether the search for drugs in the Campbell house was prior to, simultaneous with, or after the search of the vehicles.

No contraband was found on the person of either appellant. However, a search of appellants' van, located on the driveway leading to a vacant lot adjacent to the Campbell property, revealed bags of marijuana and some pills. Appellants were arrested and convicted on three counts of violation of the Georgia Controlled Substances Act.

John and Jeannie Landers appeal, arguing that the evidence seized from their van should have been suppressed by the trial judge. We agree and reverse their conviction, which was based solely on the tainted evidence.

The Court of Appeals, relying on *Bellamy v. State,* 134 Ga. App. 340 (214 SE2d 383) (1975), concluded that "common sense dictates that the appellants' van could readily be identified with the Campbell residence and its curtilage so as to make it subject to a search under the warrant." 164 Ga. App. at 659. We do not agree.

General warrants, which do not sufficiently specify the place or person to be searched, are forbidden by our Constitution. Art. 1, Sec. 1, Par. 10 (Code Ann. § 2-110) of the 1976 Georgia Constitution provides that "no warrant shall issue except upon probable cause, supported by oath, or affirmation, *particularly describing* the place, or places, to be searched, and the persons or things to be seized." (Emphasis supplied.) See also OCGA § 17-5-21 (Code Ann. § 27-303). A warrant which authorizes the search of a particular dwelling extends by implication to areas within the curtilage of the dwelling. "Curtilage" has been defined as "the yards and grounds of a particular address, its gardens, barns, [and] buildings." *Norman v. State,* 134 Ga. App. 767, 768 (216 SE2d 644) (1975). In *Bellamy v. State,* supra, the Court of Appeals held that a truck parked in the driveway of a residence could lawfully be searched under a warrant authorizing a search of the residence and its curtilage.

We think the *Bellamy* court was correct in its conclusion that a driveway is properly considered within the curtilage of the dwelling it services, at least where the driveway is located on the dwelling owner's property. But "curtilage" does not include neighboring or nearby property which is beyond the property lines of the dwelling specified in the warrant. The Landers' van was parked in the driveway of a vacant lot adjoining the Campbell residence.[1] Under

---

[1] Counsel for the State acknowledged this fact in oral argument before this court.

these circumstances, we hold that the search of the van was not conducted within the dwelling described in the warrant or its curtilage, and was therefore unauthorized. See LaFave, Search and Seizures § 4.10 (1978).

*Judgment reversed. All the Justices concur, except Gregory, J., who concurs specially, and Marshall, P. J., who dissents.*

DECIDED APRIL 5, 1983.

*William G. Posey,* for appellants.
*William A. Foster III, District Attorney,* for appellee.

GREGORY, Justice, concurring specially.

While I agree with the result reached by the majority in this case, I believe that the validity of a search ought not to depend entirely upon property lines. While it was not shown in this case, there could be circumstances where a driveway was located on adjoining property, but used by the residents in question, thereby becoming part of the curtilage for purposes of the Fourth Amendment.

MARSHALL, Presiding Justice, dissenting.

Under the authority of *Bellamy v. State,* 134 Ga. App. 340 (214 SE2d 383) (1975), a police officer executing a warrant to search a certain specified residence is authorized to search vehicles located within the curtilage of the residence. "Curtilage" is defined as the ground used with the residence. See Black's Law Dictionary, p. 460 (4th Ed., 1968). The evidence here shows that, when the search warrant was executed, the Landers' van was parked on a driveway used by Campbell and his guests, but leading to the adjacent lot and located within the boundary line of the adjacent lot owner. The apparent reason for use of the driveway by Campbell and his guests was that the house on the adjacent lot had been demolished by fire and, therefore, was vacant. Under these circumstances, it seems to me that the Landers' van was within the Campbell curtilage.

Furthermore, under the facts appearing at the time of the search, the officer executing the warrant, fully versed in the principles of Fourth Amendment jurisprudence, could have reasonably concluded that the search of the van was legal. Under these circumstances, the reason for the exclusionary rule ceases to exist, because suppression of the evidence can have no deterrent effect either on the police or on the magistrates issuing search warrants. See United States v. Williams, 622 F2d 830 (5th Cir. 1980); New York v. Adams, 422 NE2d 537 (N. Y., 1981).

To hold that the evidence must be suppressed under the circumstances of this case "betrays a mind-set more useful to those who officiate at shuffleboard games, primarily concerned with which particular square the disc has landed on, than to those who are seeking to administer a system of justice whose twin purposes are the conviction of the guilty and the vindication of the innocent." Florida v. Royer, 51 USLW 4293, 4301 (Docket No. 80-2146; decided March 23, 1983) (Rehnquist, J., dissenting). In this case, the majority overturns criminal convictions entered against two citizens whose sole misdeeds consisted of unlawfully possessing controlled substances. One wonders whether the majority would have reached the same result if the fruits of the search had been critical evidence in a heinous murder case, and one also wonders what complications the majority opinion will create if the facts underlying this search are ever repeated in a heinous murder case. However, the facts of this case in all probability will not repeat themselves. Thus, all that is accomplished by the majority opinion is to overturn criminal convictions, not because the warrant lacked the specificity required by the Fourth Amendment, and not because the officer executing the warrant clearly overstepped his authority, but because at the time of the search the "disc" had landed on the wrong "square."

I respectfully dissent.