70525. PAYTON v. THE STATE.
70526. OGLETREE v. THE STATE.
(338 SE2d 462)

McMURRAY, Presiding Judge.

Defendants appeal their conviction of the offense of trafficking in marijuana. *Held*:

1. An agent with the Georgia Bureau of Investigation (GBI) received information that marijuana was being grown behind defendant Payton's house. The GBI agent along with other law enforcement officers proceeded to investigate.

On May 21, 1981, a number of law enforcement officers were put out on a road near defendant Payton's house. They crossed an open field, then walked through a wooded area until they found the marijuana patch concealed among the trees behind defendant Payton's house. Along with the marijuana they found hoses, sprinklers and various other gardening implements. The officers found a path which led towards the house and walked up the path until they reached a position about half the distance to the house.

In June law enforcement officers returned to the marijuana patch to check as to whether it was being cultivated. This visit revealed that the marijuana was growing, some of the plants were more than 10 feet, and some new plants had been added to the patch.

Law enforcement officers returned on July 7, 1981, in order to establish a surveillance of the marijuana patch to determine who was working the field. On July 8, 1981, law enforcement officers continued their surveillance of the field and arrested defendant Ogletree when he came onto the field. Defendant Ogletree showed the officers a second smaller patch of marijuana. A search warrant was obtained for the residence and curtilage of defendant Payton. One marijuana

patch was located approximately 100 yards from the residence and the second smaller patch some 75 feet beyond the first patch.

The trial court denied the defendant Payton's motion to suppress relying upon the "open field" doctrine and held there was "nothing to taint the search in any way." Defendant Payton enumerates as error the denial of his motion to suppress the marijuana found in the field and in his home, as well as other evidence seized in those locations. Defendant Payton argues that the marijuana field was within the curtilage of his home so that the initial exploratory intrusions by the law enforcement officers were illegal searches because the searches were conducted without a search warrant and in the absence of any probable cause. The State argues that there was no invasion of a legitimate expectation of privacy and relies largely upon the recent decision in *Oliver v. United States*, ___ U. S. ___ (104 SC 1735, 80 LE2d 214), reasserting the "open field" doctrine. See also *Giddens v. State*, 156 Ga. App. 258, 259 (274 SE2d 595).

"At common law, the curtilage is the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' *Boyd v. United States*, 116 U. S. 616, 630, 29 LEd 746, 6 S.Ct. 524 (1886), and therefore has been considered part of home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. See, e.g., *United States v. van Dyke*, 643 F2d 992, 993-994 (CA4 1981); *United States v. Williams*, 581 F2d 451, 453 (CA5 1978); *Care v. United States*, 231 F2d 22, 25 (CA10), cert. denied, 351 U. S. 932, 100 LEd 1461, 76 S. Ct. 788 (1956)." *Oliver v. United States*, supra. " 'Curtilage' includes the yards and grounds of a particular address, its gardens, barns, buildings, etc. *Bellamy v. State*, 134 Ga. App. 340." *Norman v. State*, 134 Ga. App. 767, 768 (1) (216 SE2d 644). "Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family. [Cit.]" *Care v. United States*, 231 F2d 22, 25 (10th Cir. 1956). The fact finder's reliance upon the "open field" doctrine and finding there was "nothing to taint the search in any way" was not erroneous. The trial court did not err in denying defendant Payton's motion to suppress.

2. The offense of trafficking in marijuana occurs only where the quantity of marijuana involved *exceeds* 100 pounds. OCGA § 16-13-31 (c) (formerly Code Ann. § 79A-811 (e)). At the time of these offenses, July 1981, marijuana was defined to include "all parts of the plant of

the genus Cannabis . . . but shall not include . . . the mature stalks of such plant . . ." Former Code Ann. § 79A-802 (O) (Ga. L. 1979, pp. 859, 863) (this definition has since been amended, see OCGA § 16-13-21 (16)).

In the case sub judice, approximately 550 plants were seized. The total weight of all of the plants including stalks was 123-½ pounds. Apparently no attempt was made to separate "mature stalks." Indeed, the State's expert witness testified: "Well, we don't know what they mean by mature." The plants ranged in size from small plants in seedling cups to larger than 10 feet tall. The State's expert witness testified that the stalk represented a large portion of the weight of a marijuana plant, and that more than 50% of the weight of a six foot marijuana plant would be stalk.

"Mature" is defined as "[b]rought by natural process to completeness of growth and development; fitted by growth and development for any function, action or state, appropriate to its kind; full-grown; ripe." Webster's New Intl. Dictionary, Second Ed., Unabridged. In the case sub judice, there is evidence that some of the larger plants had flowering tops, that some of the plants were taller than a truck was long, and that more than 50% of the weight of a six foot marijuana plant is stalk. Clearly the 123-½ pounds did not consist entirely of marijuana as defined by statute. This is not a case such as *Lang v. State*, 165 Ga. App. 576, 579 (4) (302 SE2d 683), where the overwhelming quantity of marijuana involved obviated any weighing errors. We conclude after a careful review of the evidence presented at trial (including photographs) that *a reasonable doubt exists as to whether more than 100 pounds of marijuana was confiscated*. Although the evidence was sufficient to authorize a rational trier of fact to have found defendants guilty of the lesser included offense of possession of marijuana beyond a reasonable doubt, the evidence was not sufficient to support the jury's finding the defendants guilty of trafficking in marijuana beyond a reasonable doubt. See *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560).

3. During closing argument, the prosecuting attorney was arguing the issue of whether defendant Payton lived at the residence in question when, after referring to the State's evidence on the issue, he stated: "There has not been one witness to come forward on Mr. Payton's behalf to say he didn't live there." Defendants contend that this statement was a forbidden comment on defendants' failure to testify and argue that the trial court erred in denying a motion for mistrial. See *Gosha v. State*, 239 Ga. 37 (235 SE2d 527).

"While a prosecutor may not comment on a *defendant's* failure to testify, it is not error or improper for the prosecutor to reflect upon the failure of the defense to present evidence to rebut proof adduced by the state, and an inquiry upon the defendant's failure to produce a

witness is not error. *Battle v. State*, 155 Ga. App. 541 (271 SE2d 679)." *Blackman v. State*, 158 Ga. App. 463 (1) (280 SE2d 872). These enumerations of error are without merit.

4. Defendant Ogletree contends the trial court erred in charging the jury on conspiracy as there was no evidence that both defendants acted in concert or that any overt act was taken towards commission of the crime charged. "[A]n instruction is not inapplicable where there is any evidence, however slight, on which to predicate it." *Williams v. State*, 156 Ga. App. 17 (274 SE2d 71). Defendant Ogletree was arrested upon the marijuana patch. The presence of his personal belongings in one of the bedrooms of the house suggested his residence there. Marijuana and information in regard to cultivation of marijuana was found in the bedroom apparently used by defendant Ogletree. This enumeration of error is without merit.

*Judgments reversed. Banke, C. J., and Benham, J., concur.*

DECIDED NOVEMBER 7, 1985 —
REHEARING DENIED DECEMBER 2, 1985 — 

*John W. Lawson*, for appellant (case no. 70525).
*Johnny B. Mostiler*, for appellant (case no. 70526).
*Johnnie L. Caldwell, Jr., District Attorney, Christopher C. Edwards, J. David Fowler, Paschal A. English, Jr., Assistant District Attorneys*, for appellee.