## 70953. MEEKS v. THE STATE.
(341 SE2d 880)

BEASLEY, Judge.

Appellant was convicted by a jury of trafficking in marijuana. Several hundred pounds of plants, some 12 feet tall, were growing on land which appellant took care of for the owner and paid nominal rent for, and where he lived in a trailer. Marijuana was also found in appellant's wrecker and in his bedroom, and scales were found in the living room.

1. Appellant first asserts that the jury charge on possession was so unclear as to fail to provide the jury with proper guidance. The exact instruction now challenged as "unclear" has been held to be "a fair and accurate charge on the issue of actual and constructive possession." *Thomas v. State*, 153 Ga. App. 686, 688-689 (2) (266 SE2d

335) (1980).

The court also charged the jury on appellant's only request to charge related to possession. As no other requests were made, we find no error in the trial court's charge. "In the absence of a more specific request on the issue, the instruction given by the trial court was an appropriate and adequate definition of both actual and constructive possession. 'In the absence of request, the court's failure to define the meaning of terms used in the charge is not ordinarily ground for reversal.' [Cits.]" *Black v. State*, 167 Ga. App. 204, 207 (6) (305 SE2d 837) (1983).

As to appellant's reference to an alleged misstatement by the state on the law of possession, appellant failed to object at trial and may not now raise the issue. *Cooper v. State*, 173 Ga. App. 254, 256 (2) (325 SE2d 877) (1985).

2. Appellant next asserts that the trial court erred in denying his motion to suppress the evidence obtained as a result of the search warrant because the search exceeded that authorized by the warrant. He argues the "single wide trailer and curtlage [sic]" language of the warrant did not extend to the area where the growing marijuana was seized. The warrant contains also the following language: . . . the premises known as: Mickey Meeks . . ." Meeks was caretaker of about 50 acres.

" 'Whether the place searched is within the curtilage is to be determined from the facts, including its proximity or annexation to the dwelling, its inclusion within the general enclosure surrounding the dwelling, and its use and enjoyment as an adjunct to the domestic economy of the family. [Cit.]' " *Payton v. State*, 177 Ga. App. 104 (338 SE2d 462) (1985). As explained in *Bunn v. State*, 153 Ga. App. 270, 272 (2) (265 SE2d 88) (1980), " ' "Curtilage" includes the yards and grounds of a particular address, its gardens, barns, buildings, etc. *Bellamy v. State*, 134 Ga. App. 370 [sic].' *Norman v. State*, 134 Ga. App. 767, 768 (216 SE2d 644). In *Bellamy*, supra, a truck parked in the driveway was found to be within the curtilage. In *Norman*, supra, we found a truck within 200 feet of the house to be within the curtilage. A barn '70 or 80 yards away' from the house is within the curtilage. [Cit.] Also, . . . we found a shed within 45 to 60 feet of the house on a farm is within the curtilage and '[t]he fact that there is no fence is immaterial' . . . [A]n enclosure was unnecessary to mark the boundary of the curtilage.' ' "The yard immediately surrounding one's dwelling is well within the curtilage." [Cits.]' " Id. "But 'curtilage' does not include neighboring or nearby property which is beyond the property lines of the dwelling specified in the warrant." *Landers v. State*, 250 Ga. 808, 809 (301 SE2d 633) (1983).

The state introduced evidence that the two fields where most of the marijuana plants were growing fell within the property appellant

was renting and taking care of. The upper field began approximately 150 to 200 feet from appellant's trailer, not far from the mowed yard. The second field extended downhill and was connected to the upper field by a short path. A vegetable garden was located adjacent to the first marijuana field, separated by a line of trees. Marijuana plants were also found growing among the vegetables in the garden. Appellant admitted having a vegetable garden but denied he maintained the garden where the marijuana was discovered growing. The fields were well cultivated, watered and hoed. All the male plants had been removed, which results in the remaining female plants producing a stronger marijuana plant with more THC.

We agree with the state's argument that "[g]iven the care taken of the two marijuana fields, and their proximity to the trailer, and the fact they were being cultivated along with . . . vegetables, they were within the curtilage of the premises to be searched and the search was not unconstitutionally overbroad." Accord *Payton*, supra. The fields were in effect "gardens" of the particular address. See *Bellamy*, supra. They were not on "adjoining property," see *Landers*, supra, but rather were on land appellant had custody of and entrusted to his care. The motion to suppress was properly denied.

3. Appellant next enumerates that "all the evidence dealing with the amount [weight] of marijuana should have been suppressed," and the trafficking charge dismissed, because he was denied the right to weigh and inspect the plants seized. He does not challenge the identity of what was confiscated as being marijuana.

The contraband was seized on July 15, 1984. Appellant's arrest warrant was issued July 16 and served on him at about 5:30 that afternoon. The contraband had been weighed that morning without notice to appellant or his counsel. Between 7:30 and 8:30 of the same evening, all but about ten ounces of the contraband was destroyed, also without notice to appellant or his counsel, although there was evidence that three or four attempts had been made to contact appellant's attorney. On September 17, long after the plants had been destroyed, appellant filed a notice to produce the "[o]ne hundred pounds of marijuana to be used as evidence" in the case against him. The state did not and could not comply.

In *Lang v. State*, 165 Ga. App. 576, 579 (4) (302 SE2d 683) (1983), this court strongly disapproved the failure to notify a defendant of the destruction of contraband but concluded that it was harmless error in light of the "overwhelming" evidence against the defendant as to weight. The court explained: "Surely it would have been far wiser to notify the appellant and his attorney of the destruction of the contraband, especially since appellant was to be charged with trafficking, i.e., possession of more than 100 pounds of marijuana, and since as it happens the total 870 pounds of marijuana weighed con-

tained some undetermined amount of trash, debris, and included stalks of plants that cannot be considered contraband [cits.]. The practice of destroying evidence without prior notice to the accused has been soundly denounced [cit.], and with good reason for the state's protection as well as the defendant's. Still, we find no fatal prejudice in this destruction of all the evidence except 100 grams." In the evidence introduced against Lang was witnesses' testimony that bags of processed marijuana, including trash and debris, weighed 144 pounds. From this, the court reasoned, "[i]t may be inferred beyond a reasonable doubt that the remainder of the total 870 pounds of marijuana, i.e., the plants including stalk (cut off above the roots), therefore weighed 726 pounds." Id. And, from an expert's testimony that approximately two-thirds of a marijuana plant is stalk, the court concluded, "the inference thus being reasonable that the remaining one-third [242 pounds] is chargeable marijuana" under the Code. Id.

In this case the state introduced evidence that the weight of the marijuana plants totalled 420 pounds. An expert testified that the plants had been cut at the roots, so that none of the plants weighed had roots or dirt, and that there were no seeds in the plants weighed. Also, although there was testimony that up to 50% of the plants' weight was attributable to stalks, the definition of marijuana at the time of the alleged offense *included* "completely defoliated mature stalks." Thus at least part of the 50% figure was "chargeable marijuana." OCGA § 16-13-21 (16), Ga. L. 1982, p. 2403, § 15, effective November 1, 1982. Ga. L. 1982, p. 2403, § 24. There was no evidence that any trash or debris contributed to the 420 pound figure, nor has appellant raised this assertion. Appellant merely argues that the exact weight is in doubt "because the police officer testified during trial he drug [sic] the plants along the ground picking up others as he went," apparently asserting that corn and other vegetable plants were among the plants weighed.

It was not necessary for the state to prove each of the 463 plants seized was marijuana or that there was 420 pounds of marijuana. The state need only prove beyond a reasonable doubt that over 100 pounds of the plants confiscated was marijuana. The state introduced evidence that samples were taken from "numerous different plants" from different parts of the truck which contained the plants seized and that these samples were found to be marijuana. In light of the expert testimony, testimony of police investigators, and the photographs of the plants introduced in evidence, the jury could reasonably infer beyond a reasonable doubt that at least 100 of the 420 pounds of plants weighed was chargeable marijuana. It was not fatal that there was no testimony as to how much of the marijuana consisted of other parts of the plant which cannot be considered contraband. Id. at 581. As the *Lang* court concluded, the destruction of all but a small

amount of contraband "without notice to appellant or his attorney, even if it was erroneous as regards the appellant, was harmless beyond a reasonable doubt [cit.], and if only by accident, did not prevent the state from proving possession of 100 pounds." Id. at 579. "We do not think any remotely reasonable doubt exists in this case that there was proved at least 100 pounds of chargeable marijuana . . .." Id. at 582. See also *Evans v. State*, 176 Ga. App. 818 (338 SE2d 48) (1985); *Dunn v. State*, 178 Ga. App. 6 (1) (341 SE2d 877) (1986). We reiterate, however, that failure to give notice of impending destruction and an opportunity to verify weight by independent weighing or by presence at the state's weighing can lead to an insufficiency of admissible evidence of weight, an element of the crime.

4. Lastly, appellant contends that there was insufficient evidence of the possession element of the crime, that is, that he possessed the two marijuana fields from which the bulk of the marijuana was confiscated. He relies on the federal constitutional test established in *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979) but cites some pre-*Jackson* federal cases which of course do not apply it. The post-*Jackson* cases cited are car passenger cases and thus inapposite. The test is whether a rational trier of fact could have found proof of appellant's guilt of the crime charged beyond a reasonable doubt, based on the evidence adduced at trial.

The evidence supporting the jury's verdict shows appellant had rented and lived on the land for thirteen to fifteen years and had lived alone for over one year prior to the state's seizure of the marijuana. As part of the rent, appellant was the caretaker for the entire fifty acres. Garden tools were found in the fields, and the marijuana was cultivated. A vegetable garden was located near the first marijuana field forty to sixty feet from where appellant stopped cutting his lawn; marijuana was growing in this garden intermixed with vegetables. An irrigation system ran from appellant's boat, where he kept minnows, to a row of vegetables right above the upper field of marijuana, and a garden hose was on the lower patch.

Appellant testified that he was aware marijuana was growing on the property but that it had been put there by unidentified strangers who controlled it and warned him to stay away from it, and that he was afraid to report it.

A small bag of marijuana was found in appellant's bedroom in the trailer, a scale of the type often used to weigh contraband was found on a living room table, and marijuana was found in appellant's wrecker parked outside.

Upon review, we find there was sufficient evidence from which a rational trier of fact could find beyond a reasonable doubt that appellant was in possession of the marijuana fields, which is the element he contends was missing. Thus, the federal constitutional standard was

met.

Although appellant claims in his enumeration of error solely a violation of federal constitutional law, in his brief he argues that the evidence of possession did not meet the Georgia standard either. Under Section 14 of the Appellate Practice Act (OCGA § 5-6-40) we have " 'no jurisdiction to consider grounds which, though argued are not enumerated according to that section.' " *Slaughter v. Linder*, 122 Ga. App. 144, 148 (2c) (176 SE2d 450) (1970); *Tucker v. State*, 173 Ga. App. 742, 744 (3) (327 SE2d 852) (1985).

The Georgia test is whether the evidence is sufficient to exclude every other reasonable hypothesis except the guilt of the accused. *Goode v. State*, 130 Ga. App. 791, 792 (2) (204 SE2d 526) (1974). This test, which preceded *Jackson*, is still the law. *Shreve v. State*, 172 Ga. App. 190, 192 (322 SE2d 362) (1984). Thus the standard for sufficiency of the evidence to support a conviction is a little different under Georgia law.

Appellant cites two cases in support of the argument that the standard was not met. *Ivey v. State*, 226 Ga. 821, 824 (4) (177 SE2d 702) (1970) differs in that the evidence was that defendant was not living in the house at the premises where the marijuana was found in an accessible storage area under the house, that he had just rented it a month earlier to fix it up so he could live in it, that others had been on the premises and so had "equal opportunity" to put the potted plants in the storage area, and that this could have been done without defendant's knowledge. Comparing the evidence in that case with this one, a fact finder was authorized to disbelieve appellant's testimony that strangers, that is, someone other than he, had possession and control of the fields of growing marijuana he knew about on the property he had been occupying alone for over a year.

In *Brooks v. State*, 140 Ga. App. 371 (231 SE2d 138) (1976), the court gave interlocutory review to denial of a motion to suppress evidence of marijuana found in a house occupied by appellant and his mother. Thus the question was probable cause to issue the search warrant. The "beaten path" theory was used by the court to link the house as a place of storage and distribution to the marijuana which was growing on adjacent farm land and curing in a barn close to one of the plots. The "clearly defined paths" gave "rise to a reasonable conclusion that the primary resident would store the contraband in his house." Id. at 372. That case addresses only probable cause and not evidence beyond a reasonable doubt. However, the well-used footpaths in the instant case connect the appellant to the marijuana which he said he knew was there but had been forbidden to approach and thus the paths constitute evidence which, together with the other circumstances, support the conclusion of guilt beyond a reasonable doubt.

Other growing marijuana cases which correlate with our analysis are *Goode v. State*, supra and *Quarles v. State*, 142 Ga. App. 394 (2) (236 SE2d 139) (1977).

*Judgment affirmed. Deen, P. J., and Pope, J., concur.*

DECIDED FEBRUARY 7, 1986.

*Walter B. Harvey, Jerry C. Gray*, for appellant.

*Timothy G. Madison, District Attorney, T. David Motes, Assistant District Attorney*, for appellee.