## A91A2154. THOMAS v. THE STATE.
(417 SE2d 353)

BEASLEY, Judge.

Appellant appeals his convictions of unlawful manufacture of marijuana and unlawful possession of marijuana with intent to distribute. OCGA § 16-13-30 (b). He enumerates error on the trial court's denial of his motion to suppress marijuana found during a search.

Lieutenant Gene Beck, a helicopter pilot for the Georgia State Patrol, who is a member of a task force engaged in marijuana identification and eradication, testified that on July 6, 1990, he was engaged in a routine fly-by over rural land in Cherokee County at 400-500 feet, which was his normal cruising altitude pursuant to FAA waivers. He had been alerted to marijuana in the area and had just left a patch nearby so was still piloting his helicopter at an altitude of 100 to 150 feet pursuant to FAA waivers allowing him to fly at ground zero. He spotted a large sunken greenhouse in a heavily wooded area.

The greenhouse was located on a triangular tract of land containing approximately two acres and owned by appellant. The apex of the triangle, which points in a westerly direction, is formed by the convergence of two county roads. A driveway to a mobile home in which appellant resided ran from the road forming the southerly side of the tract at an angle of approximately 45 degrees. A jeep was parked in the driveway.

The greenhouse was located approximately 30 yards east of the single-wide mobile home. It was surrounded by trees and could not be seen from either road, although a pathway partially obscured by tree branches led from the greenhouse to the road forming the northerly border. Narrow pathways led from the area of the mobile home to the greenhouse. Otherwise the wooded area separated the two. A jeep and pickup truck were on the premises. On his first pass over the greenhouse, Lieutenant Beck could see heavy green plants in the greenhouse but could not identify them. He passed over the greenhouse a second time at the same low altitude of 100 to 150 feet, and on the outside of the property he could see several trays containing suspected marijuana plants.

Beck relayed this information to two Cherokee County deputy sheriffs who were on the ground in the vicinity of the property, and he instructed them to knock on the door of the mobile home to determine if anyone was home and to obtain permission to go onto the property. No one came to the door when the officers knocked, although the officers could hear a television and some other noises inside the mobile home. Beck then instructed the deputies to go to the greenhouse and see if anyone was there. They went to the greenhouse and heard classical music coming from a radio in the greenhouse but

no one was inside. They verified that there was what appeared to be marijuana growing in trays on the outside of the greenhouse, and they saw several hundred marijuana plants inside the greenhouse.

Cherokee County law enforcement authorities subsequently obtained a warrant authorizing a search of the mobile home, as well as its curtilage and out-buildings, for marijuana. Three hundred eighty-five marijuana plants weighing over forty pounds were found in and around the greenhouse. Paper bags containing dried and cultivated marijuana were found in the trailer. One of the deputies executing the warrant testified that the marijuana plants outside of the greenhouse were eight to nine inches tall and were in two little trays.

In his motion to suppress, appellant asserted that the law enforcement agents' entry into the greenhouse was illegal, in that it was a warrantless search without probable cause and unsupported by any recognized exception to the warrant requirement, and therefore any subsequent seizure of evidence was tainted "fruit of the poisoned tree."

The trial court ruled that the greenhouse did not lie within the curtilage of appellant's residence, and the growing of marijuana in the greenhouse constituted an agricultural use in open fields, in that "the only thing that is different about it is, it has a frame of plastic over it. If you took the frame and plastic off, it'd just be like rows of corn." For these reasons, the trial court concluded that there was no intrusion into an area protected by the Fourth Amendment.

The first issue raised by appellant on appeal is that the search warrant was invalid because it was predicated on information obtained via an illegal search. His reasoning is that the greenhouse was within the curtilage of his residence and not in open fields, and that its aerial surveillance at an altitude from which the marijuana outside of the greenhouse could be viewed constituted an intrusion into an area as to which he had a reasonable expectation of privacy as protected by the Fourth Amendment to the United States Constitution and Art. I, Sec. I, Par. XIII of the Ga. Const. of 1983. He also claims that the warrant for the search on the ground was obtained after or while that search was in progress, also resulting in the ground search's invalidity.

1. Under principles of federalism in terms of the relationship between the state and federal constitutions, we would properly start first with an analysis of appellant's state constitutional claim. *Massachusetts v. Upton*, 466 U. S. 727, 735 (104 SC 2085, 80 LE2d 721) (1984), Stephens, J., concurring opinion. He did raise it below, as required, in his motion to suppress. However, the court ruled only on the Fourth Amendment basis, and there is no state constitutional ruling for us to review. It is appellant's obligation to pursue the grounds he raises and obtain a ruling on them in the trial court, if he wishes to

obtain appellate review. *Davis v. Trusthouse Forte Hotels Worldwide*, 195 Ga. App. 768, 769 (3) (395 SE2d 235) (1990); *Allen v. Montgomery Ward &c.*, 186 Ga. App. 337, 339 (2) (367 SE2d 120) (1988).

Moreover, his brief in this regard does not make a separate and independent state constitutional argument. He relies primarily on federal constitutional case law. The two provisions are not wholly co-extensive in their construction. See *Wells v. State*, 180 Ga. App. 133, 135 (348 SE2d 681) (1986), Beasley, J., concurring specially. See also *Oregon v. Hass*, 420 U. S. 714, 719 (95 SC 1215, 43 LE2d 570) (1975). *Walker v. Whittle*, 83 Ga. App. 445, 449 (1) (64 SE2d 87) (1951), illustrates an independent analysis. The court applied the state constitution, drawing on appellate construction of it, and rejected a federal constitutional basis for appellant's claim because it was then understood that the Fourth Amendment did not cover state action. The more recent case of *Landers v. State*, 250 Ga. 808 (301 SE2d 633) (1983), also appears to have been decided on independent state grounds. The state constitutional provision has its own origin, history and meaning.

The result of all of this is that we analyze appellant's enumerations only against the Fourth Amendment.

2. "A 'search' occurs when an expectation of privacy that society is prepared to consider reasonable is infringed." *United States v. Jacobsen*, 466 U. S. 109, 113 (104 SC 1652, 80 LE2d 85) (1984).

With respect to the aerial surveillance, the question is whether the greenhouse and the area immediately adjacent to it were within the curtilage. Appellant does not submit that the airspace into which the helicopter was flown and from which the officer saw the suspected marijuana plants outside the greenhouse was itself within the curtilage.

*Florida v. Riley*, 488 U. S. 445 (109 SC 693, 102 LE2d 835) (1989), involved a helicopter surveillance, at an altitude of 400 feet, of the interior of a residential backyard greenhouse. The court regarded the greenhouse as being within the curtilage. This was a crucial factor in the court's analysis because of Fourth Amendment coverage of the curtilage. A majority of the Court concluded that, because Riley did not have a reasonable expectation that the greenhouse was protected from such observation from a helicopter flying at a lawful and non-interfering altitude which was not "sufficiently rare in this country," it was not a "search" subject to the Fourth Amendment. Id. at 451. Justice O'Connor, who concurred with four members of the court in the judgment, gave greater significance than did the plurality to whether "the public can generally be expected to travel over residential backyards at an altitude of 400 feet." She seems to have considered the lawfulness of the altitude only as a starting point. Her conclusion is that "public use of altitudes lower than that — particularly

public observations from helicopters circling over the curtilage of a home — may be sufficiently rare that police surveillance from such altitudes would violate reasonable expectations of privacy, despite compliance with FAA air safety regulations." The court did not address whether the airspace in which the helicopter was flying as being within or without the curtilage and, since appellant does not suggest it, neither do we address such a question.

The Fourth Amendment protects "houses" by its terms, but the "courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private. [Cits.]" *Oliver v. United States*, 466 U. S. 170, 180 (104 SC 1735, 80 LE2d 214) (1984). The curtilage is "the land immediately surrounding and associated with the home . . . the area to which extends the intimate activity associated with the 'sanctity of a man's home and the privacies of life,' *Boyd v. United States*, . . ." Ibid. "The protection afforded the curtilage is essentially a protection of families and personal privacy in an area intimately linked to the home, both physically and psychologically, where privacy expectations are most heightened." *California v. Ciraolo*, 476 U. S. 207, 212-213 (106 SC 1809, 90 LE2d 210) (1986). *Ciraolo* also involved observation of curtilage.

Whether the greenhouse and its immediately adjacent ground, on which the trays were observed, were within the curtilage, is tested by the definition in *United States v. Dunn*, 480 U. S. 294, 300 (107 SC 1134, 94 LE2d 326) (1986). There we were instructed "that curtilage questions should be resolved with particular reference to four factors: the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put, and the steps taken by the resident to protect the area from observation by people passing by." Id. at 301. The greenhouse and the spot on which the trays sat were 30 yards from the house trailer. In *Dunn*, which held the barn not to be within the curtilage, it was 60 yards from the house; in *Riley*, which held the greenhouse to be within the curtilage, it was 10 to 20 feet behind the mobile home. This factor would tend to raise a strike against Thomas' greenhouse as being within his curtilage.

The area we are concerned with was not fenced with the housetrailer, and there was no enclosure whatsoever other than the woods. Anyone could walk up to it through the woods or up one of the two roads leading in from the public roads. This is another strike against it.

The area was put to the use of a large covered greenhouse full of

plants which from an aerial distance of 100-150 feet could be seen to be all the same and thus unlikely to constitute food for the residents of the trailer. In fact, based on what the officer observed, together with his experience and the information which led him to believe there was marijuana growing somewhere in the locale, he suspected that the plants in the greenhouse were marijuana, and it was this suspicion which prompted him to investigate further by flying close again. What he had seen, and then saw more acutely, did not appear to be "so associated with the activities and privacies of domestic life that the officers should have deemed [it] as part of [Thomas'] home." *Dunn*, supra at 303. Strike three.

Finally, what steps were taken to protect the area from observation by passersby? No fences were put up, no gates were across the roads, no covering of trees was assured to protect it from aerial view. However, the greenhouse itself was completely closed up so that one could not see into it, and the few plants outside were so small that they could not be seen with the naked eye from routinely traveled airspace.

But even if this factor of protection were scored in Thomas' favor, the totality of the circumstances leads to the conclusion that "the area in question is [not] so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection." *Dunn*, supra at 301. This is not, after all, said the Court in *Dunn*, a finely tuned formula to be mechanically applied.

Thus, even if the low-flying helicopter would have been in a place which violated an expectation of privacy that society is prepared to honor if the officer was observing activities in the home, it was not violating the resident's Fourth Amendment rights when it hovered over the non-curtilage area. "[A] police officer who observes contraband in plain view is entitled to seize it, so long as he is at a place where he is entitled to be, i.e., so long as he has not violated the defendant's Fourth Amendment rights in the process of establishing his vantage point. See *Ker v. California*, 374 U. S. 23 (83 SC 1623, 10 LE2d 726) (1963); *Harris v. United States*, 390 U. S. 234 (88 SC 992, 19 LE2d 1067) (1968). . . ." *State v. Aultman*, 160 Ga. App. 550, 551 (287 SE2d 580) (1981).

The rule allowing the warrantless search of open fields provides that, "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home. [Cits.] This rule is true to the conception of the right to privacy embodied in the Fourth Amendment. . . . [O]pen fields do not provide the setting for those intimate activities that the Amendment is intended to shelter from government interference or surveillance. There is no societal interest in protecting the privacy of those activities, such as the cultivation of crops, that occur in open

fields." *Oliver*, 466 U. S. at 178-189, supra; see *Payton v. State*, 177 Ga. App. 104, 105 (1) (338 SE2d 462) (1985); compare *Karlovich v. State*, 165 Ga. App. 761 (302 SE2d 396) (1983), with *Meeks v. State*, 178 Ga. App. 9, 10 (2) (341 SE2d 880) (1986). Moreover, "[t]he Supreme Court observed in *Oliver*, supra at p. 180, fn. 11: 'An open field need be neither "open" nor a "field" as those terms are used in common speech. For example, . . . a thickly wooded area nonetheless may be an open field as that term is used in construing the Fourth Amendment.'" *Gravley v. State*, 181 Ga. App. 400, 402 (352 SE2d 589) (1986).

The trial court's conclusion that appellant's greenhouse was not within the curtilage of his home is supported by undisputed evidence and we agree with this legal conclusion. Even if there were some dispute about it, we would have to accept the trial court's findings of fact because there is sufficient evidence to support them. *State v. Watts*, 154 Ga. App. 789, 790 (4) (270 SE2d 52) (1980); see *Williams v. State*, 151 Ga. App. 833 (1) (261 SE2d 720) (1979); *State v. Smith*, 134 Ga. App. 602 (215 SE2d 345) (1975).

Thus the information which was the basis for the search warrant was legitimately obtained.

3. The final ground upon which appellant urges suppression is that the ground search or searches proceeded before the warrant was obtained. There is a great deal of conflicting evidence as to the facts surrounding this point. The trial court is the factfinder in motions to suppress hearings. OCGA § 17-5-30 (b); *Brooks v. State*, 129 Ga. App. 393 (2) (199 SE2d 578) (1973). "'On appeal of the denial of a motion to suppress(,) the evidence is to be construed most favorably to the upholding of the findings and judgment made.' [Cit.] The trial court's findings must be adopted unless determined to be clearly erroneous." *Dennis v. State*, 166 Ga. App. 715, 716 (305 SE2d 443) (1983). See *Lego v. Twomey*, 404 U. S. 477 (92 SC 619, 30 LE2d 618) (1972). We have carefully reviewed the evidence and cannot conclude that there is insufficient evidence to support the trial court's final ruling.

*Judgment affirmed. Johnson, J., concurs. Carley, P. J., concurs specially.*

CARLEY, Presiding Judge, concurring specially.

I agree that the judgment of the trial court should be affirmed in that there was no error in the denial of appellant's motion to suppress. However, I cannot agree with Division 2 to the extent that it belabors the issue as to whether the greenhouse was within or without the curtilage. Plainly and simply, this case is controlled by the plurality opinion in *Florida v. Riley*, 488 U. S. 445 (109 SC 693, 102 LE2d 835) (1989).

Decided March 4, 1992 —
Reconsideration denied March 24, 1992 — 

*Maloy & Jenkins, W. Bruce Maloy,* for appellant.
*Garry T. Moss, District Attorney, Gregory A. Hicks, Assistant District Attorney,* for appellee.