A93A1535. EASTLAWN CORPORATION v. BANKERS EQUIPMENT LEASING COMPANY.
(439 SE2d 753)

SMITH, Judge.

We granted Eastlawn's application for discretionary appeal to consider the denial of its motion to set aside a foreign judgment domesticated in this state under the Uniform Enforcement of Foreign Judgments Law, OCGA § 9-12-130 et seq., based on Eastlawn's limited contacts with the foreign jurisdiction.

Eastlawn is a Georgia corporation with its principal place of business in McDonough, Georgia. Its primary business is the management of a cemetery there. Appellee Bankers Equipment is incorporated in Arizona, and its primary business is the leasing of computer equipment to cemetery management entities. In October 1987, Clifford Hornsby, individually and as secretary-treasurer of Eastlawn, executed in Georgia and mailed to Arizona a lease for computer equipment with Bankers Equipment, which was accepted that same month. The items subject to the lease included computer hardware from various manufacturers and software designed for use in cemetery management from another Arizona corporation, CSII, Inc., which was not a party to the Arizona action.

It was Eastlawn's prior business dealings with CSII in Georgia and in Florida that ultimately led to its lease agreement with Bankers Equipment. Hornsby first met representatives of CSII at a convention in Florida in July 1987. In August of that year, the president of CSII visited Hornsby in McDonough and negotiated an agreement for Eastlawn to "purchase a computer system." In September, a representative of Bankers Equipment contacted Hornsby by an unsolicited telephone call placed into Georgia regarding Eastlawn's contract with CSII. During this conversation, the representative solicited and negotiated the lease agreement with Eastlawn underlying the judgment

now in dispute.

In early October, Hornsby's daughter, who was an employee of Eastlawn, and Hornsby's then wife, whose status with Eastlawn at that time is disputed, traveled to Arizona in order to receive computer training at CSII. This contact was made after Eastlawn had entered into an agreement with CSII, but prior to executing the agreement with Bankers Equipment. The two remained in Arizona from October 5 through October 10, 1987. There is no suggestion in the record that Eastlawn representatives in Arizona conducted any new business with CSII, or had any contact at all with Bankers Equipment during that week. Clifford Hornsby, who remained in Georgia during that week, executed the lease agreement with Bankers Equipment on October 9 in his individual capacity and as an officer of Eastlawn, and he mailed the agreement back to Arizona at that time. Bankers Equipment accepted the agreement on October 20, 1987. Bankers Equipment shipped the computer equipment FOB from Arizona, and Eastlawn paid the shipping charges.

The lease terms required Eastlawn to make payments to Bankers Equipment for a period of 60 months and included the following provision: "This agreement shall be deemed to have been made and executed in Maricopa County, Arizona, regardless of the order in which the signatures of the parties shall be affixed hereto, and shall be interpreted and the rights and liabilities of the parties hereto determined in accordance with the laws of the State of Arizona."

Early in the following year, Hornsby took the equipment leased from Bankers Equipment to CSII in Arizona, either to correct problems or to learn how to use the software. Finally, Bankers Equipment points out that Eastlawn made contact with it by telephone and by mail during the period in question.

Eastlawn defaulted on the lease in February 1989. In June of that year, Bankers Equipment filed a complaint against Eastlawn in Maricopa County, Arizona, and Eastlawn was served pursuant to Arizona's long-arm statute. Hornsby admitted that Eastlawn received service and confirmed that no appearance was made on its behalf. A default judgment was entered in that action on November 29, 1989. The judgment, prepared by an attorney for Bankers Equipment, included the following finding: "It is found that [Eastlawn] is a corporation doing business in [Arizona] and has caused an event to occur in [Arizona] out of which the claim which is the subject of the complaint herein arose. It is therefore found that this court has personal jurisdiction over [Eastlawn]." Bankers Equipment domesticated the Arizona judgment in the Superior Court of Henry County in January 1990. Eastlawn later moved to set aside the domesticated judgment under OCGA § 9-11-60 (d) (1), asserting that the Arizona court rendering it lacked personal jurisdiction over Eastlawn. See OCGA § 9-12-132.

In its order denying Eastlawn's motion, the court noted the choice of law provision in the lease agreement and Hornsby's characterization of it as "language for 'lawyers.'" The court observed that Eastlawn "'purposely' consummated a lease submitting itself to the laws of Arizona, and said lease contemplated a continuing relationship for 60 months with an Arizona corporation." The court also noted Eastlawn's contacts with CSII and the presence of its employees and officers in Arizona on two separate occasions as a result of those contacts. The trial court found "that Eastlawn had 'fair warning' of the possibility of being haled into Arizona for its dealings with Bankers Equipment . . . , and that to do so does not offend notions of fair play and substantial justice." Eastlawn timely appealed following the grant of its application for discretionary review.

Eastlawn enumerates as error the court's finding that Hornsby's former wife was an officer of Eastlawn when she and her daughter traveled to Arizona for training, and the failure of the trial court to apply Arizona law. However, we need not decide those issues. Based upon the facts and mode of analysis urged by Bankers Equipment, we find that the Arizona court lacked personal jurisdiction over Eastlawn and reverse.

"Under the full faith and credit clause of the United States Constitution, a judgment of a foreign court will be enforced by the courts of this state. However, that judgment may be collaterally attacked where the foreign court lacked jurisdiction of the person. . . ." *Gordon v. Gordon*, 237 Ga. 171 (227 SE2d 53) (1976). "The Due Process Clause protects an individual's liberty interest in not being subject to the binding judgments of a forum with which he has established no meaningful 'contacts, ties, or relations.' [Cit.]" *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 471-472 (105 SC 2174, 85 LE2d 528) (1985). "[T]he constitutional touchstone [is] whether the defendant purposefully established 'minimum contacts' in the forum State." Id. at 474. "'[T]he foreseeability that is critical to due process analysis . . . is that the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' [Cit.]" Id.

With these basic principles in mind, we first consider whether Eastlawn has done some act or consummated a transaction to avail itself of the law of Arizona. See *Klein v. Allstate Ins. Co.*, 202 Ga. App. 188, 190 (2) (413 SE2d 777) (1991), aff'd 262 Ga. 599 (422 SE2d 863) (1992). To some extent, the facts of this case are quite analogous to those found insufficient to establish meaningful contacts with the forum in *Signet Bank/Virginia v. Tillis*, 196 Ga. App. 433 (396 SE2d 54) (1990). The undisputed facts show that Bankers Equipment first contacted Eastlawn by way of an unsolicited telephone call placed into Georgia and that during that telephone call a lease agreement

was negotiated. The lease agreement was mailed to Eastlawn in Georgia, where Hornsby executed it. The equipment was shipped from Arizona, and Hornsby paid for the shipping. Clifford Hornsby was the sole negotiator for Eastlawn of the agreements with CSII and with Bankers Equipment, and all such negotiations were conducted and agreements entered by him without ever leaving the State of Georgia. It is undisputed that Hornsby's visit to Arizona the next year was remedial in nature — an unanticipated attempt by Eastlawn to receive the benefit of bargains already made with CSII and with Bankers Equipment. As in *Signet*, there is no indication that Eastlawn and Bankers Equipment contemplated that they need ever meet. Likewise as in *Signet*, there is no indication that the equipment was leased for productive use anywhere other than Georgia.

On the other hand, Bankers Equipment shows that the lease agreement includes a choice of law provision establishing that Arizona law would be applied and that the contract would be "deemed" to have been executed there. However, this provision is in itself insufficient to confer jurisdiction. *Mayacamas Corp. v. Gulfstream Aerospace Corp.*, 190 Ga. App. 892, 894-895 (1) (380 SE2d 303) (1989); *Burger King*, supra at 482. It is no more than a factor to be considered in light of Eastlawn's other contacts with Arizona. In this regard, we note that personal jurisdiction does not turn on " 'conceptualistic . . . theories of the place of contracting or of performance' " alone. Id. at 478. Instead, *Burger King* shows we should favor a "highly realistic" approach recognizing that a " 'contract' is 'ordinarily but an intermediate step serving to tie up prior business negotiations with future consequences which themselves are the real object of the business transaction.' [Cit.]" Id. at 479.

Bankers Equipment also relies on the visits by Eastlawn officers and employees to CSII in Arizona before and after the lease agreement was executed. Neither visit was in any way connected to the lease agreement with Bankers Equipment, and no business was conducted with Bankers Equipment as a result of those visits. The purpose of Eastlawn's first visit to CSII was to receive training on its software, and the second, to address problems Eastlawn experienced in trying to make use of the leased equipment. We note, however, that the lease agreement itself disclaims all warranties regarding condition, merchantability, and fitness for any particular purpose; that Eastlawn leased the equipment "as is"; and that under the agreement, payments to Bankers Equipment would be due regardless of any complaint Eastlawn may have had with CSII due to the installation or operation of the equipment in Georgia. It is undisputed that Eastlawn's visits to Arizona concerned themselves only with the ability to operate and make use of CSII's software, and not Eastlawn's obligations to Bankers Equipment. Furthermore, the contract makes

clear that, at the very least, Bankers Equipment sought to ensure that Eastlawn's obligations to it under the lease were not dependent upon the usefulness or condition of the equipment acquired from CSII. See generally *Third Century v. Morgan*, 187 Ga. App. 718 (371 SE2d 262) (1988).

We find that Eastlawn's visits to CSII in Arizona clearly did not have any realistic connection with Bankers Equipment. Moreover, Bankers Equipment's position seems to suggest that Eastlawn was required to avoid visits to Arizona intended to resolve problems and address training issues with respect to CSII's software in order to " 'alleviate the risk of burdensome litigation' there. [Cit.]" *Burger King*, supra at 475, n. 17. We find little to merit such a view.

It cannot be said that the Arizona court's exercise of jurisdiction over Eastlawn is reasonable under the circumstances presented — that "fair warning" of due process has been given by Eastlawn's prior contacts with the forum. *Klein*, supra. The court therefore erred in denying Eastlawn's motion to set aside the void judgment for lack of jurisdiction. See generally *Signet Bank/Virginia v. Tillis*, supra.

*Judgment reversed. Pope, C. J., McMurray, P. J., Birdsong, P. J., Cooper and Johnson, JJ., concur. Beasley, P. J., Andrews and Blackburn, JJ., dissent.*

BEASLEY, Presiding Judge, dissenting.

The trial court did not err by honoring the Arizona judgment. In this instance, the law does not require plaintiff Bankers Equipment to enforce its contract by a contract action in Georgia. This court has drawn too narrowly the picture of the transaction involved here, which in its composite involved three parties. The issue below was whether the Arizona court had personal jurisdiction over the Georgia corporation.

1. Before addressing that issue, a procedural point should be made because the majority cites *Signet Bank/Virginia v. Tillis*, 196 Ga. App. 433 (396 SE2d 54) (1990). There, the challenge to the foreign court's lack of personal jurisdiction was asserted in a defensive "answer" to the domestication filing, thus purportedly treating the domestication as an entirely new action in the Georgia court. This was improper procedure. "The Uniform Enforcement of Foreign Judgments Law is a summary procedure for endowing a filed foreign judgment with the 'same effect' as a judgment of the court in which it is filed." *Hammette v. Eickemeyer*, 203 Ga. App. 243 (416 SE2d 824) (1992). Any litigation ensuing is limited to that which is afforded any other Georgia judgment. OCGA § 9-12-132. The course followed in *Signet Bank* is "inconsistent with the summary nature of the uniform law and the purpose of the law, which is to expedite the recognition and enforcement of foreign judgments." Id. at 244.

The train in *Signet Bank* left the track and traveled erroneously to a motion for summary judgment, which is obviously not available *after* there is a judgment. Summary judgment is authorized only when seeking recovery on a claim, counterclaim, cross-claim or a declaratory judgment. OCGA § 9-11-56 (a). As said in *Sanders v. S. D. Leasing*, 189 Ga. App. 409, 410 (376 SE2d 420) (1988), "unless a judgment is void on its face [so as to be subject to collateral attack pursuant to OCGA § 9-11-60 (a)], it must be attacked by *direct proceeding* by motion for new trial or motion to set aside. . . ." Until the complaint in equity was discontinued, OCGA § 9-11-60 (e), it was a method for direct attack. See *Logan v. Nunnelly*, 128 Ga. App. 43, 46 .(195 SE2d 659) (1973). Now only OCGA § 9-11-60 (b) is available to remedy a voidable domesticated judgment.

Because the parties and the trial court, as well as this court, treated the domestication in *Signet Bank* as a new action, this court erroneously reached the issue of the foreign court's jurisdiction over defendant Tillis. As was done in *Sanders*, this court should have ruled that Tillis failed to attack the domesticated judgment properly and thus ended its analysis. The federal full faith and credit clause, (United States Constitution, Art. IV, Sec. I), and the Uniform Enforcement of Foreign Judgments Law which implements it, are frustrated where *two* successive suits, in two different states, are allowed; *one* is deemed sufficient. The judgment debtor's state must either enforce the judgment as a judgment or, for some legal reason, refuse to do so. It is not to conduct a second lawsuit proceeding on the foreign judgment.

Eastlawn pursued the proper method for challenging jurisdiction by attacking the foreign judgment through a motion to set it aside. OCGA § 9-11-60 (b).

2. Eastlawn enumerates as error that the order below is fatally flawed because it is based on an erroneous finding of fact.

In assessing Eastlawn's contacts with the State of Arizona, the court found that Sue Hornsby (then wife of Eastlawn's secretary-treasurer) was in Arizona for Eastlawn with respect to the lease equipment at a time when she was an officer of the corporation. The evidence actually showed that Ms. Hornsby was an officer of the corporation for a short time in the year after her visit to Arizona. However, she made the trip at the request of Eastlawn's officer to accompany its employee for training on the CSII equipment, and the corporation paid at least some expenses for their trip. Whether or not Ms. Hornsby was an officer at the time of her visit is not significant as she was clearly acting as agent of the corporation. The misstatement of fact is not fatal to the trial court's conclusions.

3. The domesticated judgment is presumed binding and the foreign court's jurisdiction is presumed unless and until it is proved oth-

erwise; the burden is on the party asserting invalidity to show it. *Patterson v. Patterson*, 208 Ga. 7, 10, 11 (64 SE2d 441) (1951); *Logan v. Nunnelly*, supra at 45. In *Patterson*, it was clearly stated: "The trial court in this case was under a duty to accord prima facie validity to the [foreign] decree. . . ." The same duty rested here.

Eastlawn's first enumeration of error is that the court below failed to apply Arizona law. Since it is the Arizona judgment which is being challenged for lack of personal jurisdiction, it should be measured first by Arizona's jurisdictional standards. However, Eastlawn did not raise the ground of non-adherence to Arizona law in its motion to set aside nor in its memorandum in support of the motion. It relied solely on the Due Process Clause of the United States Constitution and case law applying it to long-arm jurisdiction. It raised the ground in oral argument, apparently in response to the statement of Bankers Equipment (in its memorandum opposing the motion) that Arizona law applied and was shown on the Arizona judgment to have been proven and applied. However, Eastlawn did not obtain a ruling on this ground. The trial court ruled only on the federal constitutional question and concluded that federal due process was complied with. Whether the Arizona court's jurisdiction over Eastlawn comported with Arizona law is not before us, not having been *both* raised and ruled on below. *Thomas v. State*, 203 Ga. App. 529, 530 (1) (417 SE2d 353) (1992), and cases cited therein.

4. The final enumeration, which gets to the heart of the matter and the point of dissent, is that jurisdiction was not satisfied under the Due Process Clause of the United States Constitution.

"[T]he constitutional touchstone [is] whether the defendant purposefully established 'minimum contacts' in the forum State . . . '[that is, whether] the defendant's conduct and connection with the forum State are such that he should reasonably anticipate being haled into court there.' [Cit.]" *Burger King Corp. v. Rudzewicz*, 471 U. S. 462, 474 (105 SC 2174, 85 LE2d 528) (1985). In making this determination, we must evaluate prior negotiations, contemplated future consequences, the terms of the contract, and the parties' actual course of dealing. Id. at 479.

Eastlawn's secretary-treasurer, Clifford Hornsby, initiated contact with CSII, an Arizona corporation which supplies computer software to the cemetery business. He did so at a business convention in Florida when he "filled out a card authorizing CSII representatives to come to Eastlawn Memorial Gardens." Hornsby, on behalf of Eastlawn, subsequently decided he wanted the CSII products for its operation in Georgia.

Acting both on behalf of Eastlawn and in his individual capacity, he entered into a 60-month lease for the computer equipment, which consisted of CSII's software plus various computer hardware, with ap-

pellee Bankers Equipment, another Arizona corporation. This was by choice, as there is no evidence or contention that Bankers Equipment was the only potential lessor. The lease culminated the negotiations and caused Bankers Equipment to purchase in excess of $26,000 worth of computer equipment selected by Eastlawn for its benefit and use from an Arizona vendor chosen by Eastlawn. CSII was the vendor for all of it. By the lease, Eastlawn prompted the Arizona leasing company to pay the Arizona vendor ("we approve payment by you to the vendor"). It agreed to lease the equipment from the Arizona company, and it agreed to make monthly payments to the Arizona company for five years with the right to purchase it if it so chose.

Sue and Wendy Hornsby went to Arizona as Eastlawn's agents for a week (Monday to Saturday) at the corporation's expense for the latter to receive computer training at CSII. During this period Clifford Hornsby signed the lease. He also spent a week at CSII in Arizona later to receive computer training and resolve problems with the use of the computer. Eastlawn also caused the CSII technician to travel to Georgia to train another employee on the equipment. Eastlawn mailed monthly payments to Bankers Equipment in Arizona for over a year and then defaulted by discontinuing them.

Significantly, the lease also contained a provision under which the agreement is "deemed to have been made and executed in Maricopa County, Arizona," and a choice of law provision that the agreement "shall be interpreted and the rights and liabilities of the parties hereto determined in accordance with the laws of the State of Arizona."

Eastlawn knowingly entered into a contract not only with a choice of law provision, agreeing to be bound by Arizona law. It also agreed that for the purpose of the construction and enforcement of the contract, it was made and executed in Arizona as a matter of *fact*. This is much more than merely contracting with an out-of-state party, which alone does not establish minimum contacts for federal constitutional purposes. *Burger King Corp. v. Rudzewicz*, supra at 479.

Eastlawn's connections with the State of Arizona involving the subject of the contract were such that it should reasonably be expected to appear there to defend an action based on the alleged failure to perform its contractual obligations. Considering all the relevant factors designated in *Burger King*, the action in Arizona met the minimal contacts requirement for personal jurisdiction. In *Signet Bank*, supra, the only contact was the mailing of an application for a credit card and subsequent payments to the forum state. There was not, for example, an express provision in the contract designating the foreign state as the place of making.

The Arizona court's jurisdiction over appellant did not offend the

Fourteenth Amendment due process clause and thus its judgment is entitled to full faith and credit. OCGA § 9-12-131. The trial court properly refused to set aside the domesticated judgment.

I am authorized to state that Judge Blackburn joins in this dissent.

DECIDED DECEMBER 3, 1993 —<br>RECONSIDERATION DENIED DECEMBER 20, 1993 —

*Chambers, Chambers & Chambers, Timothy D. Chambers*, for appellant.

*Crumbley & Crumbley, James T. Chafin III*, for appellee.