## A05A1580. GORDON v. THE STATE.
(626 SE2d 214)

MIKELL, Judge.

Following a jury trial, Alan L. Gordon was convicted of possessing and manufacturing marijuana. He appeals the denial of his motion to suppress the marijuana found during a search of his rental home and property. In its order denying Gordon's motion, the trial court concluded that the marijuana was found outside the curtilage of Gordon's residence. For reasons that follow, we affirm.

The evidence adduced at the suppression hearing established that on July 16, 2002, Georgia Bureau of Investigation (GBI) Agent Mike Mason, a supervisor with the Governor's Task Force for Marijuana Eradication, flew in a helicopter over Athens-Clarke County and observed some marijuana plants growing in the middle of a kudzu patch behind a home on Whitehead Road. Mason testified that he was flying at an altitude of 500 feet, but that he could have spotted Gordon's marijuana patch from 1,000 feet. Mason relayed the information to GBI Special Agent Fred Stevens, who sent a ground team from the Athens-Clarke County Police Department, including Lieutenant Mike Hunsinger, Detective Dana Frost, and Special Agent Mark Lavender, to investigate further. The officers parked on a dirt road in front of the home and proceeded around back where Mason directed them to the marijuana patch while hovering over the area in his helicopter. Officers located 32 marijuana plants in a 40 feet by 40 feet clearing in the middle of a 30- to 40-acre kudzu patch behind Gordon's home. According to Frost and Lavender, the clearing was 25 to 30 yards behind the home. According to Hunsinger, the clearing was 30 feet from the home. A trail led from the home to the plants, which were surrounded by a mesh hogwire fence, and a water hose stretched from the home down the trail to the plants. Hunsinger observed containers of nutrients and a pH indicator adjacent to the patch, and noticed that the soil was moist. Hunsinger testified that he could see through the hogwire fence. Officers knocked on the door of the home, but no one answered. Frost went to obtain a search warrant while other officers remained behind to secure the scene. The search warrant was based on an affidavit from Frost recounting Mason's observations during the flyover, and describing Frost's observations when he located the marijuana patch behind Gordon's home. When Frost returned with the search warrant, Gordon was in the back of a patrol car. In addition to seizing the 32 marijuana plants, officers searched the residence with Gordon's help and found marijuana magazines and books, dried marijuana, marijuana seeds, and other drug paraphernalia.

Gordon contends that the trial court erred in denying his motion to suppress. Specifically, he argues that the warrantless search and seizure of the marijuana plants was illegal and a violation of his Fourth Amendment rights because the plants were located within the curtilage of his home. Gordon claims that he had a reasonable expectation of privacy in the area where he grew the marijuana. We disagree.

"Whether evidence is found within the curtilage of a residence is a mixed question of fact and law. On appeal, we accept the trial court's findings of fact unless clearly erroneous, but [we] owe no deference to

the trial court's conclusions of law. Instead, we are free to apply anew the legal principles to the facts."[1]

The Fourth Amendment to the United States Constitution and Article I, Section I, Paragraph XIII of the Georgia Constitution guarantee "[t]he right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures." "The touchstone of Fourth Amendment analysis is whether a person has a 'constitutionally protected reasonable expectation of privacy.' "[2] "The Amendment does not protect the merely subjective expectation of privacy, but only those expectations that society is prepared to recognize as reasonable."[3] A person "may not legitimately demand privacy for activities conducted out of doors in [open] fields, except in the area immediately surrounding the home [i.e., the curtilage]."[4]

Curtilage has been considered part of the home itself for Fourth Amendment purposes and courts have extended Fourth Amendment protection to the curtilage, as an exception to the open fields doctrine.[5] Our Supreme Court has defined curtilage as "the yards and grounds of a particular address, its gardens, barns, and buildings."[6] The United States Supreme Court has "recognized that the Fourth Amendment protects the curtilage of a house and that the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself."[7] The Court "identified the central component of this inquiry as whether the area harbors the intimate activity associated with the 'sanctity of a man's home and the privacies of life.' "[8] In *Dunn*, the Court set forth a four-factor test to determine the extent of the curtilage:

> the proximity of the area claimed to be curtilage to the home, whether the area is included within an enclosure surrounding the home, the nature of the uses to which the area is put,

---

[1] (Citations omitted.) *Espinoza v. State*, 265 Ga. 171, 172 (1) (454 SE2d 765) (1995).

[2] *California v. Ciraolo*, 476 U. S. 207, 211 (II) (106 SC 1809, 90 LE2d 210) (1986), citing *Katz v. United States*, 389 U. S. 347, 360 (88 SC 507, 19 LE2d 576) (1967) (Harlan, J., concurring).

[3] (Citations and punctuation omitted.) *Oliver v. United States*, 466 U. S. 170, 177 (III) (104 SC 1735, 80 LE2d 214) (1984), citing *Katz*, supra at 361.

[4] Id. at 178 (III) (A).

[5] See id.; *Hester v. United States*, 265 U. S. 57, 59 (44 SC 445, 68 LE 898) (1924).

[6] (Citation and punctuation omitted.) *Espinoza*, supra at 173 (2).

[7] *United States v. Dunn*, 480 U. S. 294, 300 (II) (107 SC 1134, 94 LE2d 326) (1987), citing *Oliver*, supra at 180.

[8] (Citations and punctuation omitted.) Id., citing *Oliver*, supra.

and the steps taken by the resident to protect the area from observation by people passing by.[9]

The evidence discussed above supports the trial court's conclusion that the marijuana patch was not located within the curtilage of the home, and that Gordon did not manifest a subjective expectation of privacy in the patch that society would accept as objectively reasonable.

First, the marijuana patch was located at least 30 feet from the home, but no more than 30 yards. In *Thomas v. State*,[10] we held that a greenhouse located 30 yards from the home was not within the curtilage.[11] Second, Gordon concedes that there were no fences or enclosures surrounding the patch and the residence. Third, and most significant, the officers had legally viewed the marijuana patch from the air and knew prior to entering the area that it was used to grow marijuana and not for an intimate domestic activity.[12] Finally, Gordon's attempts to protect the property from observation were insufficient to bring the marijuana patch into the curtilage. The plants were not growing inside a structure of any kind or shielded by any covering, but were located in a 30- to 40-acre kudzu field and surrounded by a mesh hogwire fence. Even if the plants were shielded from view, the other factors taken together weigh against a finding that the patch was located within the curtilage of the residence.[13]

The trial court's conclusion that the marijuana patch was outside the curtilage of Gordon's home is supported by the evidence. "Even if

---

[9] Id. at 301 (II).

[10] 203 Ga. App. 529 (417 SE2d 353) (1992).

[11] Id. at 532-534 (2). See *Dunn*, supra at 302 (II) (finding that barn was 60 yards – a "substantial distance" – from house); *United States v. Hatch*, 931 F2d 1478, 1481 (II) (11th Cir. 1991) (no Fourth Amendment violation where marijuana was growing 30 yards and farther from house); *Scott v. State*, 270 Ga. App. 292, 294 (1) (606 SE2d 312) (2004) (holding that garbage cans, located a considerable distance from residence and 20 to 25 feet from the street, were not within the curtilage). See also *United States v. French*, 291 F3d 945, 952 (III) (7th Cir. 2002) ("privacy expectations are most heightened when the area in question is nearer (within 20 feet) to the home") (citations omitted).

[12] See *Dunn*, supra ("[i]t is especially significant that [officers] possessed objective data [(aerial photographs)] indicating that the barn was not being used for intimate activities of the home").

[13] See id. at 301 (II) ("We do not suggest that combining these factors produces a finely tuned formula that, when mechanically applied, yields a 'correct' answer to all extent-of-curtilage questions. Rather, these factors are useful analytical tools only to the degree that, in any given case, they bear upon the centrally relevant consideration – whether the area in question is so intimately tied to the home itself that it should be placed under the home's 'umbrella' of Fourth Amendment protection.").

there were some dispute about it, we would have to accept the trial court's findings of fact because there is sufficient evidence to support them."[14]

*Judgment affirmed. Andrews, P. J., and Phipps, J., concur.*

DECIDED JANUARY 18, 2006 —

*Stephen J. Haedicke, Thomas J. Killeen,* for appellant.
*Kenneth W. Mauldin, District Attorney, John M. Chenhall, Assistant District Attorney,* for appellee.

