A06A0376. PHILLIPS v. THE STATE.
(630 SE2d 844)

JOHNSON, Presiding Judge.

A jury convicted Jerone Phillips of criminal damage to property and making a terroristic threat after he rammed a neighbor's pickup truck with his own and shot up the victim's house and two more of his

---

[4] *Kight v. State*, 242 Ga. App. 13, 15 (1) (528 SE2d 542) (2000).
[5] Id. at 15-16 (1).
[6] See id. at 16 (1).
[7] Id.; see *Guzman v. State*, 273 Ga. App. 819, 822 (2) (616 SE2d 142) (2005).

vehicles. Phillips now appeals on the ground that the trial court erred when it denied his motion to suppress photographs taken by police investigating the incident, who went into his backyard and saw the truck described by the victim parked in a shelter. We find no error and affirm.

Where the evidence at a hearing on a motion to suppress is uncontroverted and no question of credibility is presented, we review the trial court's application of the law to undisputed facts de novo.[1] As to questions of fact and credibility, however, we defer to the trial court's determination, affirming its decision unless clearly erroneous.[2]

So viewed, the record shows that the victim purchased land that Phillips, who lived nearby, had once rented. Phillips's attorney sent a letter to the victim asking him if Phillips could take down a house and an electric fence he had erected on the property during the time he rented it. The victim did not respond to the letter.

Soon afterward, the victim was approaching his house when he saw Phillips's blue Chevrolet pickup truck driving away and noticed fresh tire tracks across his yard. The victim then saw that his own pickup truck had been broadsided. The victim called the police, told them about the dispute, and gave them a description of Phillips's truck, including the water coolers tied on the back of it.

When two police officers arrived at Phillips's residence, lights were on inside and outside, and a light-colored S-10 pickup was parked on the right side of the driveway. One officer testified that they knocked on the front door, although the other could not recall whether they knocked, "tooted their horn," or neither. The officers then pulled their car to the side of the house and walked around the back, calling out Phillips's first name as they did so. The headlights of the car they were driving lit up a shelter with one open side located 50 to 100 yards from the back of the house. A blue Chevrolet pickup matching the victim's description was parked inside. Having seen the pickup, the first officer went inside the shelter and found damage to its back bumper and pellet food in its bed. The second officer then took photographs of the damage and the pellet food, which had also been spilled in the victim's yard.

The police soon received another call that shots had been fired at the victim's house and at two more of the victim's vehicles. A neighbor told the second officer that he had seen a light-colored S-10 pickup at the victim's house during the shooting, and that the S-10 had driven away with its lights off. When the two officers interviewed Phillips

---

[1] *Vansant v. State*, 264 Ga. 319, 320 (1) (443 SE2d 474) (1994).
[2] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

soon afterward, he told them that the victim was "a dead man," and that he was "going to kill that motherfucker."

The police used the photographs they had taken to gain a search warrant for the premises, by authority of which they seized pellets, bumper scrapings from the blue Chevrolet, and other evidence. After his arrest on charges of criminal damage to property, aggravated assault, and terroristic threat, Phillips moved to suppress the photographs. After a hearing, the trial court denied the motion. A jury later found Phillips guilty of four counts of criminal damage to property and one count of terroristic threat.

Phillips's sole enumeration of error on appeal is that the trial court erred when it denied his motion to suppress the photographs taken when the officers entered the shed, examined his truck, and photographed the damage to it as well as the pellet food spilled out of it. We disagree.

> [I]t has long been settled that objects falling in the plain view of an officer who has a right to be in the position to have that view are subject to seizure and may be introduced in evidence. The "plain view" exception to the warrant requirement is based on the analysis that the particular item of incriminating evidence has not been discovered as the result of a search. "Plain view" is best understood not as an independent exception to the Warrant Clause but simply as an extension of whatever prior justification might exist for an officer's access to an object or situation.[3]

If an item is found to have been within plain view, then, its seizure does not amount to a search.[4]

After receiving the victim's report that he saw Phillips's blue Chevrolet pickup driving away from his house immediately before he discovered the damage to his own truck, the officers had the right to approach Phillips's house in order to make investigative inquiries.[5] As the trial court held, the officers were also authorized to walk around to the back of the house to determine whether anyone was home.[6] When they did, they saw the blue Chevrolet pickup parked in a shelter which lacked a door on at least one side.

---

[3] (Citations and punctuation omitted.) *Galbreath v. State*, 213 Ga. App. 80, 82 (2) (443 SE2d 664) (1994).

[4] *Pickens v. State*, 225 Ga. App. 792, 795 (1) (b) (484 SE2d 731) (1997).

[5] See *Williams v. State*, 249 Ga. App. 119, 121 (1) (b) (i) (547 SE2d 395) (2001).

[6] See *Galbreath*, supra, 213 Ga. App. at 82-83 (2).

Phillips argues that this structure lay within the curtilage of his residence, and therefore could not be searched without a warrant. Again, we disagree.

The Supreme Court of Georgia has defined curtilage as "the yards and grounds of a particular address, its gardens, barns, and buildings."[7] The United States Supreme Court has held that "the extent of the curtilage is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself," with "the central component of this inquiry" being "whether the area harbors the intimate activity associated with the 'sanctity of a [person's] home and the privacies of life.' "[8] Specifically, the factors to be considered in determining whether a particular area or object lies within the curtilage of a home are (1) the proximity of the area claimed to be curtilage; (2) whether the area is included within an enclosure surrounding the home; (3) the nature of the uses to which the area is put; and (4) the steps taken by the resident to protect the area from observation by people passing by.[9]

Here, the truck was parked in a shelter which was open on one side and located at least 50 yards from the house. Thus Phillips had no reasonable expectation of privacy as to the truck's exterior.[10] Once the officers had seen the truck matching the victim's description, they had the right to enter the open structure containing it, since they reasonably believed that the truck, the damage to it, and the pellet food in and around it were all connected to the crime they were investigating.[11] Finally, since Phillips had no legitimate expectation of privacy concerning either the truck's exterior or that portion of it "which [could] be viewed from outside the vehicle by either inquisitive passersby or diligent police officers,"[12] the officers here had the right to record what they saw on and around the truck by photographic means.

Since the portions of the truck documented in the photographs at issue here were in plain view, no warrant was necessary to obtain

---

[7] (Punctuation omitted.) *Espinoza v. State*, 265 Ga. 171, 173 (2) (454 SE2d 765) (1995).

[8] (Punctuation omitted.) *Gordon v. State*, 277 Ga. App. 247, 249 (626 SE2d 214) (2006).

[9] Id. at 249-250.

[10] See id. at 250 (marijuana patch at least 30 feet but no more than 30 yards from house is not within curtilage); *Galloway v. State*, 178 Ga. App. 31, 34-35 (342 SE2d 473) (1986) (police may seize gun seen through window of van parked on defendant's property).

[11] *Galbreath*, supra, 213 Ga. App. at 82 (police may seize marijuana plants found in plain sight behind trailer); see also *Hood v. State*, 229 Ga. 435 (192 SE2d 154) (1972) (police could search getaway car fitting description given).

[12] *Shaw v. State*, 253 Ga. 382 (320 SE2d 371) (1984), quoting *Texas v. Brown*, 460 U. S. 730, 740 (103 SC 1535, 75 LE2d 502) (1983).

them. Thus we need not consider Phillips's remaining contentions. The trial court did not err when it denied the motion to suppress.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED MAY 8, 2006 — 

*Garland, Samuel & Loeb, Donald F. Samuel, William C. Lea*, for appellant.

*Steven Askew, District Attorney, Mary K. Mitchell, Assistant District Attorney*, for appellee.