A08A0732. KING v. THE STATE.
(657 SE2d 570)

BLACKBURN, Presiding Judge.

Following a jury trial, Bryan King appeals his convictions for trafficking in cocaine and for possessing marijuana with intent to

---

[14] *Baskin v. State*, 267 Ga. App. 711, 714 (1) (b) (600 SE2d 599) (2004).

distribute. He challenges the sufficiency of the evidence and argues that the trial court erred in denying his motion to suppress the evidence police recovered when they saw King packaging some of the drugs through the back door window of his residence and when they entered the premises after they witnessed him trying to destroy the drugs (once he was aware of police presence). Discerning no error, we affirm.

1. When reviewing a defendant's challenge to the sufficiency of the evidence, we view the evidence in the light most favorable to the jury's verdict, and the defendant no longer enjoys the presumption of innocence. *Short v. State.*[1] We do not weigh the evidence or determine witness credibility, but only determine if the evidence was sufficient for a rational trier of fact to find the defendant guilty of the charged offense beyond a reasonable doubt. *Jackson v. Virginia.*[2]

So viewed, the evidence shows that during the evening of a dark December night, police on patrol in a neighborhood witnessed a juvenile peeking through the side windows of a residential home. Suspecting the juvenile was a burglar or a "Peeping Tom," the three officers in the undercover patrol car (clad in black with the words "Atlanta Police" clearly marked in yellow on their chests and backs) exited the vehicle to investigate, whereupon the juvenile immediately ran toward the rear of the residence. Announcing they were police, they commanded him to stop, which he did at a small set of steps leading to the home's rear deck and back door. In response to their inquiries, the juvenile stated he did not live at the residence, but he could not explain his actions in being there and peeking through the windows.

While one officer was taking the juvenile to the patrol car, the other two officers ascended the nearby steps leading to the rear deck and back door to inquire of the home's occupants whether they knew the juvenile or could help explain his actions there. The officers immediately smelled burnt marijuana and, when at the back door, could see through the windows of that door into the lighted kitchen, in which they witnessed King at a table with another man. On the table were several packages of cocaine and also some marijuana, which King was placing into small packages. The officers knocked on the back door, and, without looking up, King asked who was there. The officers announced, "Atlanta Police," which caused King to jump up, grab handfuls of the marijuana packages, and flee to an adjacent bathroom. When he returned without the marijuana packages, the

---

[1] *Short v. State*, 234 Ga. App. 633, 634 (1) (507 SE2d 514) (1998).
[2] *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

officers surmised he was destroying evidence and entered the premises to prevent further destruction.

King and the other man then ran to a bedroom and escaped through a window, only to be apprehended by the officer who had been leading the juvenile to the patrol car. He returned King and the other man to the kitchen, where King stated that he lived at the residence. The officers inside the residence seized the cocaine and marijuana lying on the table as well as marijuana packages floating in the toilet of the bathroom which King had initially entered.

In addition to the above evidence, the State presented expert testimony at trial, which identified the recovered substances as cocaine (weighing more than 35 grams) and marijuana (weighing more than 94 grams). King testified in his own defense, claiming that someone else was packaging and possessing the drugs and that he was merely an innocent bystander. The jury found King guilty of trafficking in cocaine and of possessing marijuana with intent to distribute. The trial court denied King's motion for a new trial.

The evidence sufficed to sustain both convictions. "The testimony of a single witness is generally sufficient to establish a fact." OCGA § 24-4-8. Here, two officers witnessed King, who lived at the house, sitting at a table on which was 35 grams of cocaine and 94 grams of marijuana that he was placing into smaller packages. King tried to destroy some of the evidence by placing it into a toilet. Such sustained a finding that he knowingly possessed 28 grams or more of cocaine, which constituted trafficking in cocaine (OCGA § 16-13-31 (a) (1)), and a finding that he possessed marijuana with the intent to distribute (OCGA § 16-13-30 (j) (1)). The credibility of the officers and the conflicts in the testimony were matters that the jury obviously resolved against King. See *McCollum v. State*.[3]

2. King's other enumeration is that the trial court erred in denying his motion to suppress the evidence seized at King's residence. Specifically, he argues that the officers had no right to approach his residence via the back door and therefore were not entitled to be at the back door where they witnessed his packaging the drugs. We disagree.[4]

King does not contest that, if the officers were properly at the back door, their viewing of King and his activities through the window of that door would fall within the parameters of the plain view doctrine. See *Galbreath v. State*[5] (where police validly intrude onto

---

[3] *McCollum v. State*, 257 Ga. App. 330, 331-332 (1) (571 SE2d 405) (2002).

[4] We need not address the State's contention that King had no standing to assert a Fourth Amendment claim based on King's conflicting trial testimony that he did not live at the residence.

[5] *Galbreath v. State*, 213 Ga. App. 80, 82-83 (2) (443 SE2d 664) (1994).

property and see immediately-recognizable contraband in plain view, they may seize that contraband); *Dean v. State*[6] (officers going to knock on door are entitled to look through the glass of that door). Nor does he contest that, once having seen King react to police presence by grabbing the contraband, running to a nearby room, and returning without the contraband, the police were entitled under the exigency doctrine to enter the premises to prevent the destruction of evidence and to seize the contraband. See *State v. Venzen*.[7] Rather, the crux of his argument is that police must approach only the front door of a residence to make inquiries, and that the approach to the back door here was an invalid intrusion.

Thus, the question before us is whether the officers' approach to the back door (as opposed to the front door) under the factual circumstances of this case was a valid intrusion. In addressing this question, we note that "[a] trial judge's findings of fact on a motion to suppress should not be disturbed if there is any evidence to support them; determinations of fact and credibility must be accepted unless clearly erroneous; and the evidence must be construed most favorably to the upholding of the trial court's findings and judgment." *Kirsche v. State*.[8] See *Tate v. State*.[9]

The officers here had chased a burglary suspect to the rear of the residence and apprehended him next to the few steps leading to the rear deck and back door. Chasing criminal suspects into backyards is certainly a permissible police activity. See *Jester v. State*.[10] Accordingly, the officers were validly at the back steps leading to the back door at the time it became obvious they needed to talk to the occupants of the residence to determine their knowledge of the burglary suspect.

The question then becomes whether it was reasonable for the officers to approach the residence via the nearby back door, or whether they were required to walk around the house to the front door to make inquiries. We have consistently held that police may approach the side door or the back door of a residence (even if this requires going through a closed gate) under certain circumstances, such as where the front door is not easily accessible or where no one answers the front door. See *Padgett v. State*[11] (officers could approach back door where "stuff" was in front of front door); *Phillips v. State*[12]

---

[6] *Dean v. State*, 200 Ga. App. 752, 753 (1) (409 SE2d 667) (1991).

[7] *State v. Venzen*, 286 Ga. App. 597, 598-599 (1) (649 SE2d 851) (2007).

[8] *Kirsche v. State*, 271 Ga. App. 729 (611 SE2d 64) (2005).

[9] *Tate v. State*, 264 Ga. 53, 54 (1) (440 SE2d 646) (1994).

[10] *Jester v. State*, 229 Ga. App. 490, 492 (2) (494 SE2d 284) (1997).

[11] *Padgett v. State*, 287 Ga. App. 789, 790-791 (1) (653 SE2d 102) (2007).

[12] *Phillips v. State*, 279 Ga. App. 243, 244-245 (630 SE2d 844) (2006).

(officers could approach rear of home when no one answered front door); *Galbreath,* supra, 213 Ga. App. at 83 (2) (after receiving no response at front door, officer could walk around to the back of the house to determine whether anyone was home); *State v. Zackery*[13] (police could approach side door when front door was blocked by lawnmower); *State v. Lyons*[14] (when no one answered front door, police could enter backyard through closed gate to reach the back door). See also *United States v. Anderson*[15] (police may approach back door after receiving no answer at front door). Compare *Kirsche,* supra, 271 Ga. App. at 732 (officers wrongfully entered backyard where defendant responded to knock at front door). Other circumstances from other jurisdictions interpreting the Fourth Amendment, which justified an approach to a back door or side door, include a sign out front that read "Party In Back" (*Alvarez v. Montgomery County*[16]) and a side door accessed via a sidewalk from an open gate (*People v. Willard*[17]).

Based on the above authorities, which recognize that based on the circumstances, officers may enter a backyard and approach a back door to make inquiries, we hold that the particular set of circumstances here justified the officers' approach to the back door. Having just pursued a burglary suspect into the backyard, the officers were validly there at the steps leading to the back door. Making inquiries of the occupants of the residence where the burglary suspect was acting suspiciously was the logical next step in the officers' investigation. It was reasonable for the officers to access the nearby back door entrance (only a few feet away) to the residence to make those inquiries. Accordingly, the approach to the back door was a valid intrusion under the circumstances, which means the officers were in a proper place at the time they witnessed King and the contraband in plain view. The trial court did not err in denying the motion to suppress.

*Judgment affirmed. Miller and Ellington, JJ., concur.*

DECIDED JANUARY 31, 2008.

*Richard W. Marks,* for appellant.

---

[13] *State v. Zackery,* 193 Ga. App. 319, 320 (387 SE2d 606) (1989).

[14] *State v. Lyons,* 167 Ga. App. 747, 748 (307 SE2d 285) (1983).

[15] *United States v. Anderson,* 552 F2d 1296, 1299-1300 (I) (8th Cir. 1977).

[16] *Alvarez v. Montgomery County,* 147 F3d 354, 358-359 (II) (B) (4th Cir. 1998).

[17] *People v. Willard,* 47 Cal. Rptr. 734, 744 (Cal. App. 1965).

*Paul L. Howard, Jr., District Attorney, John O. Williams, Assistant District Attorney*, for appellee.