A03A1526. THE STATE v. CLARK.
(588 SE2d 254)

ELDRIDGE, Judge.

The State appeals from an order of the Superior Court of Glynn County granting Michael Clark's motion to suppress marijuana which was found in and seized from a densely wooded swamp area outside the curtilage of Clark's home. Because the superior court's order was apparently premised upon an incorrect determination that the "open fields" doctrine does not apply to densely wooded, swampy areas; because the "open fields" doctrine permitted the officers in this case to be in the place where they initially observed the contraband; and because no warrant is required to seize contraband located in an "open field" outside the curtilage of an individual's residence, we reverse the judgment of the court below.

Glynn-Brunswick Narcotics Enforcement Officer T. Wright re-

---

[7] See *Young v. State*, 237 Ga. 852, 855 (230 SE2d 287) (1976).
[8] See *Parker v. State*, 249 Ga. App. 509, 512 (3) (548 SE2d 475) (2001).

ceived information from an anonymous source that Clark was grow-
ing and selling marijuana at his residence located at 365 Emanuel
Church Road in Glynn County. Wright testified at the hearing on the
motion to suppress that he and several other narcotics officers drove
to a location "in a wooded section down the road from Mr. Clark's res-
idence and walked quite a distance through the woods to an area
until we could see through the woods the roof of Mr. Clark's resi-
dence." The area through which the officers walked was,

> all woods. No fences or any type of boundary marked. . . .
> Through the pine trees, a swamp, wooded area. . . . At least
> half a mile. Maybe even a mile. . . . We walked a zig-zag
> through — and had to go, like I say, through a swamp and
> also through a densely wooded area to get there.

Clark, himself, described the area behind his mobile home as "it's
like a swamp. In the back, it's got cypress stumps." Photographs in
the record confirm the above descriptions.

The area immediately surrounding Clark's mobile home was
grass and was "bush hogged" up to a tree/brush line marking the
beginning of pine woods interspersed with six- to eight-foot-tall
brush; a narrow trail had been hacked with a bush ax a short dis-
tance into the brush and pines, "but it just stopped." Wright testified
that the officers obtained a vantage point "at least 40 to 50 feet from
any type of mowed or cut grass." From this vantage point in the
woods, the officers saw ahead of them in plain view a marijuana
plant growing in the woods outside the maintained area around
Clark's residence. A green painted PVC pipe was close to the plant.
Officer Wright testified that both the plant and the pipe were far
enough into the brush that "you couldn't see any of the residence
from where it was." The PVC pipe was searched, and marijuana was
found in it.

Based on the anonymous tip, the presence of the marijuana
plant, and the contents of the PVC pipe, the officers exited the woods
into Clark's yard and approached his mobile home. Wright testified
that,

> When we first approached him, Investigator Matheson told
> him why we was there. . . . Investigator Matheson in my
> presence told Mr. Clark that we had information that he had
> marijuana plants growing in the woods behind his house
> and that he may be involved in selling marijuana. And
> Investigator Matheson also told him that we had already
> found one of the plants behind his house. And, also, I believe
> he told him that we had found one of the P.V.C. pipes.

Clark was given *Miranda*[1] warnings. He agreed to talk to the officers and made several incriminating statements. Wright testified that Clark was asked "for consent to search the residence and the remainder of the property. . . . A form — consent to search form was filled out by Investigator Matheson and I watched as Mr. Clark signed — read and signed it." The form was read to Clark and "then it was afforded — or he was afforded the chance to read it himself even after that." Officer Wright testified that Clark was not threatened or coerced into signing the consent to search form; neither was he offered hope of benefit or reward in exchange for consent to search.

After giving verbal consent and signing the consent form, Clark personally directed the officers to two more marijuana plants and another PVC pipe located in the "heavily brushed, unkept area of the woods" outside the maintained grassy area around Clark's mobile home. Marijuana residue, scales, and apparent marijuana sales transaction documents were located inside Clark's trailer.

Clark filed a motion to suppress, asserting that the officers violated his Fourth Amendment right against unreasonable searches and seizures. In support thereof, Clark introduced a survey plat which showed that the officers had entered onto Clark's property, albeit the wooded unimproved portion of his property, in order to establish the vantage point from which they saw the first, pre-consent marijuana plant and PVC pipe; Clark's testimony and his markings on the plat demonstrated that this first marijuana plant and PVC pipe seized by the officers were located in the swampy, pine woods area outside the maintained portion of his yard.

In its order on Clark's motion to suppress, the trial court considered the officers' pre-consent discovery of the first marijuana plant and the painted PVC pipe. With regard thereto, the court specifically found that,

> [a] marijuana plant was found on Defendant's property outside the curtilage of the home, and a pipe containing marijuana residue was found closer to the residence, but also outside its curtilage.

The trial court also found that the dense pine wood swamp area from which the officers observed the plant and pipe was part of Clark's property. In that regard and without stating a factual or legal basis, the court held that,

> The area was not an open field, and the search and seizure therefore were not subject to the open fields exception to the protections afforded by the Fourth Amendment.

---

[1] *Miranda v. Arizona*, 384 U. S. 436 (86 SC 1602, 16 LE2d 694) (1966).

As a consequence, the trial court concluded that the officers established a vantage point on Clark's property where they were not entitled to be; that there were no exigent circumstances which would allow a warrantless search and seizure of the marijuana plant and the PVC pipe; and that "the warrantless search of Defendant's [sic] which occurred prior to the officers' encounter with Defendant was unlawful."

Based on the foregoing, the court further concluded that Clark's subsequent consent to search was tainted because the officers informed Clark about the unlawful search and seizure prior to obtaining consent; the court reasoned that "when a property owner is asked for consent to search, it is improper to accompany that request with a representation that contraband has already been seized on the owner's property, if that seizure was unlawful." The trial court granted Clark's motion to suppress. *Held*:

a. By its terms, the Fourth Amendment of the United States Constitution protects "houses," but the courts have extended Fourth Amendment protection to the "curtilage," the area immediately surrounding a person's home.[2]

> As Justice Holmes, writing for the Court, observed . . . , the common law distinguished "open fields" from the "curtilage," the land immediately surrounding and associated with the home. The distinction implies that only the curtilage, not the neighboring open fields, warrants the Fourth Amendment protections that attach to the home. At common law, the curtilage is the area to which extends the intimate activity associated with the sanctity of a man's home and the privacies of life, and therefore has been considered part of the home itself for Fourth Amendment purposes. Thus, courts have extended Fourth Amendment protection to the curtilage; and they have defined the curtilage, as did the common law, by reference to the factors that determine whether an individual reasonably may expect that an area immediately adjacent to the home will remain private.[3]

The four factors used to determine the extent of a home's curtilage have been identified as (1) how close the area claimed to be curtilage is to the home; (2) whether the area is included within an enclosure surrounding the home; (3) the uses to which the area is

---

[2] (Citation and punctuation omitted.) *Thomas v. State*, 203 Ga. App. 529, 532 (2) (417 SE2d 353) (1992).

[3] (Citations and punctuation omitted.) *Oliver v. United States*, 466 U. S. 170, 180 (III) (A) (104 SC 1735, 80 LE2d 214) (1984).

put; and (4) the steps taken by the homeowner to protect the area from observation.[4]

In this case, the trial court specifically found as a matter of fact that the location of the marijuana plant and PVC pipe in the undeveloped wood/swamp area of Clark's property was *outside* the curtilage of his home, and, as a consequence, the vantage point established by the officers — a point farther into the wood/swamp area than the marijuana plant and pipe — was likewise outside the curtilage of Clark's home. On the record before us and in consideration of the four factors outlined above, we find a solid evidentiary basis for the trial court's finding. Testimony showed that the wood/swamp area at issue was not marked or enclosed in any fashion; it went undisputed that the wooded, swampy area was not used for any legitimate purpose; the evidence showed that the wood/swamp was outside the maintained area of Clark's home; and aerial and ground photographs of Clark's property showed the undeveloped, accessible nature of the area at issue which surrounded the maintained portion of Clark's residence.

> In reviewing a trial court's decision on a motion to suppress, an appellate court must adopt the trial court's findings of fact unless they are clearly erroneous and not supported by any evidence admitted at the suppression hearing.[5]

As the evidence supports the trial court's finding that the contraband and, by extension, the officers were outside the curtilage of Clark's home, such finding is not clearly erroneous and must be upheld.

b. The Fourth Amendment affords special protection to people in their "persons, houses, papers, and effects."[6] That protection, however, is not extended to the open fields. "The distinction between the latter and the house is as old as the common law."[7] In that regard,

> It is clear, . . . that the term "open fields" may include *any unoccupied or undeveloped area outside of the curtilage*. An open field need be neither "open" nor a "field" as those terms are used in common speech. For example, contrary to respondent['s] . . . suggestion, a thickly wooded area none-

---

[4] *United States v. Dunn*, 480 U. S. 294, 301 (107 SC 1134, 94 LE2d 326) (1987); *Espinoza v. State*, 265 Ga. 171, 173 (454 SE2d 765) (1995).

[5] (Citations omitted.) *State v. David*, 269 Ga. 533, 535 (1) (501 SE2d 494) (1998).

[6] See also Art. I, Sec. I, Par. XIII of the Georgia Constitution (1983).

[7] (Citation omitted.) *Hester v. United States*, 265 U. S. 57, 59 (44 SC 445, 68 LE 898) (1924).

theless may be an open field as that term is used in construing the Fourth Amendment.[8]

In this case, as discussed above, the trial court properly concluded that both the officers' vantage point and the first marijuana plant/PVC pipe were outside the curtilage of Clark's home. The record shows that they were located in the "unoccupied or undeveloped area outside of the curtilage."[9] Within the contemplation of the Fourth Amendment as it has been construed, this unoccupied, undeveloped wood/swamp area outside Clark's curtilage is an "open field," unenclosed and accessible on foot to anyone who chooses to make his or her way through it. "[A]s a practical matter, such areas are open to view and accessible to the public (even to a trespasser) and the police in ways that a home, an office, or a commercial structure would not be."[10] Accordingly, the trial court erred in its legally and factually unsupported conclusion that the wooded, swampy area outside Clark's curtilage was not an "open field" for purposes of Fourth Amendment analysis.

c. "We conclude, from the text of the Fourth Amendment and from the historical and contemporary understanding of its purposes, that an individual has no legitimate expectation that open fields will remain free from warrantless intrusion by government officers."[11] The government's intrusion upon an open field "is not one of those 'unreasonable searches' proscribed by the text of the Fourth Amendment."[12] As this Court has held in an analogous context,

> We reject defendant's argument that the surveillance of his house by an officer stationed on his property in woods behind the house constituted an illegal intrusion into the curtilage of his dwelling. The evidence showed the officer observed the [defendant's house] by standing in the woods at the rear of defendant's property beyond the portion of defendant's land which was maintained and cultivated.[13]

Additionally, for purposes of Fourth Amendment analysis it does not matter that the pine wood swamp belonged to Clark. Property

---

[8] (Citations omitted; emphasis supplied.) *Oliver v. United States,* supra at 180, n. 11; accord *Thomas v. State,* supra; *Mattingly v. State,* 205 Ga. App. 777 (1) (423 SE2d 709) (1992); *Gravley v. State,* 181 Ga. App. 400 (352 SE2d 589) (1986).

[9] *Oliver v. United States,* supra at 180, n. 11.

[10] (Citation omitted.) *Gravley v. State,* supra at 403; see *Mauk v. State,* 242 Ga. App. 191 (529 SE2d 197) (2000).

[11] *Oliver v. United States,* supra at 181 (III) (A).

[12] Id. at 177 (II).

[13] *Mattingly v. State,* supra at 777.

rights are not commensurate with Fourth Amendment privacy rights.

> Nor is the government's intrusion upon an open field a "search" in the constitutional sense because [it] is a trespass at common law. . . . For trespass law extends to instances where the exercise of the right to exclude vindicates no legitimate privacy interest. Thus, in the case of open fields, the general rights of property protected by the common law of trespass have little or no relevance to the applicability of the Fourth Amendment.[14]

Nor does it matter for Fourth Amendment purposes that the contraband was located in a secluded area on Clark's property, which ostensibly evidenced an "expectation of privacy" through concealment.

> It is true, of course, that [Clark], in order to conceal [his] criminal activities, planted the marihuana upon secluded land. . . . And it may be that because of such precaution[ ], few members of the public stumbled upon the marihuana crops seized by the police. Neither of these suppositions demonstrates, however, that the expectation of privacy was *legitimate* in the sense required by the Fourth Amendment. The test of legitimacy is not whether the individual chooses to conceal assertedly "private" activity. Rather, the correct inquiry is whether the government's intrusion infringes upon the personal and societal values protected by the Fourth Amendment. . . . [W]e find no basis for concluding that a police inspection of open fields accomplishes such an infringement.[15]

Here, Clark had no reasonable expectation of privacy in the unenclosed wood/swamp area outside his curtilage, and, thus, the officers' intrusion thereon did not implicate the Fourth Amendment. Under the facts of this case, the trial court erred in finding that the officers' establishment of a vantage point in the undeveloped, unoccupied "open field" on Clark's property outside the curtilage of his home was a violation of his Fourth Amendment rights.

---

[14] *Oliver v. United States*, supra at 183-184 (IV); accord *Quintrell v. State*, 231 Ga. App. 268, 270 (1) (499 SE2d 117) (1998); *Gravley v. State*, supra at 402; *Perry v. State*, 204 Ga. App. 643, 645 (2) (419 SE2d 922) (1992).

[15] (Footnote omitted; emphasis in original.) *Oliver v. United States*, supra at 182-183; see *Perry v. State*, supra at 645-646.

d. Because Fourth Amendment protections are not applicable to "open fields" areas, no search warrant is necessary for a search of such areas and, consequently, for the seizure of contraband located during a search of such areas.

A search made within the curtilage of the owner without a warrant is unconstitutional and void. The constitutional protection does not extend to open fields, orchards, or other lands not an immediate part of the dwelling site, and a warrant is not a necessary prerequisite to a search of such an area. . . . [F]or beyond the curtilage a search warrant is not needed.[16]

The trial court erred in finding that the officers' seizure of the first marijuana plant and PVC pipe found in the "open fields" wood/swamp area outside the curtilage of Clark's home was unlawful absent a warrant. Therefore, the trial court's grant of the motion to suppress as to such pre-consent evidence was error.

e. The trial court determined that informing Clark of the warrantless seizure of the first marijuana plant and PVC pipe tainted his subsequent consent to search his premises. However, as detailed above, the seizure of such contraband did not implicate the Fourth Amendment and did not require a warrant. Accordingly, the trial court's basis for concluding the consent to search was "tainted" was error.

f. The record shows that Clark's consent to search was voluntary. Officer Wright testified at the suppression hearing that Clark's consent to search was given voluntarily and without coercion, and the record contains a consent form signed by Clark. Clark testified at the hearing and did not dispute the otherwise voluntary nature of his consent; his testimony went only to establish the alleged illegality of both the officers' pre-consent presence in his pine wood swamp and the warrantless seizure of the first marijuana plant and PVC pipe, thereby rendering "any consent that was gotten from Mr. Clark . . . fruit of the poisonous tree." However, as discussed above, Clark's voluntary consent was not the "fruit" of an illegal search and seizure. The trial court's grant of Clark's motion to suppress as to evidence obtained post-consent was error.

*Judgment reversed. Johnson, P. J., and Mikell, J., concur.*

---

[16] (Citations and punctuation omitted.) *Ray v. State*, 181 Ga. App. 42 (1) (351 SE2d 490) (1986).

DECIDED SEPTEMBER 18, 2003 —
RECONSIDERATION DENIED OCTOBER 2, 2003.

Stephen D. Kelley, District Attorney, Charles K. Higgins, Assistant District Attorney, for appellant.
Bart G. Altman, Patrick C. Kaufman, for appellee.