A07A1343. MORSE v. THE STATE.
(655 SE2d 217)

RUFFIN, Judge.

Following a bench trial on stipulated facts, the trial court found William Conrad Morse guilty of seven counts of theft by receiving stolen property. Morse appeals, asserting that the trial court erred in denying his motion to suppress. He also argues that the trial court improperly admitted into evidence his pretrial statements to police. For reasons that follow, we affirm.

1. The parties do not dispute the facts found by the trial court. And where, as here, the facts involved in a motion to suppress are undisputed, we review the trial court's application of law to those facts de novo.[1]

The relevant facts show that a Butts County sheriff's deputy received a report from a witness who had seen a pickup truck parked

---

late at night at a residential construction site. There had been several thefts from nearby construction sites, although nothing had been stolen from the site where the truck was observed. The witness provided the vehicle's tag number, and the deputy discovered that it was registered to Morse's wife.

The deputy subsequently spoke with Morse, who admitted that he had been at the construction site, but asserted that he was taking pictures of the house in order to "get ideas" for his own home construction project in Henry County. The deputy went to the Henry County location and found the construction site described by Morse. The site was fenced, and the gravel driveway was blocked by a locked gate. "No Trespassing" and "Beware of Dog" signs were posted at the entrance. The deputy nevertheless climbed over the locked gate and entered the property. Morse's unfinished house was framed, but had no sheetrock or doors, and no one appeared to be living there.

The deputy observed a white trailer in front of the house. He recalled a "be on the lookout" alert two or three weeks earlier relating to a similar trailer that had been stolen. He checked the serial number of the trailer and determined that it was stolen. The deputy then contacted the Henry County Police Department for assistance.

The Henry County officer who responded also entered the property and inspected a Bobcat skid steer loader. He noticed that the metal plate bearing its vehicle identification number ("VIN") had been removed. The officer notified his superiors, who secured a search warrant for the premises. The search warrant was executed and various items of stolen property were seized.

Based on the evidence presented, the trial court denied Morse's motion to suppress. It concluded that the "open fields" doctrine authorized the initial warrantless entry onto the property and that the subsequently obtained search warrant permitted seizure of the contraband. Although concerned by the result, we are constrained by precedent to agree.

The Fourth Amendment to the United States Constitution preserves "[t]he right of the people to be secure in their persons, houses, papers, and effects" by prohibiting unreasonable searches and seizures.[2] "[T]he touchstone of Amendment analysis [is] whether a person has a constitutionally protected reasonable expectation of privacy."[3] The protection afforded such expectation depends both

---

[2] Morse's argument on appeal focuses on the "open fields" doctrine under the Fourth Amendment. He does not raise a separate state constitutional claim, and we need not address whether the entry onto his property violated the Georgia Constitution.

[3] (Citation and punctuation omitted.) *Oliver v. United States*, 466 U. S. 170, 177 (104 SC 1735, 80 LE2d 214) (1984).

upon (1) whether the individual has manifested a subjective expectation of privacy, and (2) whether society is willing to recognize that expectation as reasonable.[4]

The Amendment reflects "the overriding respect for the sanctity of the home that has been embedded in our traditions since the origins of the Republic."[5] Thus, "[a] dwelling place, whether flimsy or firm, permanent or transient, is its inhabitant's unquestionable zone of privacy under the Fourth Amendment, for in his dwelling a citizen unquestionably is entitled to a reasonable expectation of privacy."[6] The Fourth Amendment also protects the "curtilage" of a dwelling, defined as the area immediately surrounding the home that "harbors the intimate activity associated with the sanctity of a man's home and the privacies of life."[7]

The United States Supreme Court, however, has refused to extend the protection to "open fields" that are not an immediate part of a dwelling, regardless of the property owner's subjective expectation of privacy.[8] According to that Court, the search of an open field is "not one of those 'unreasonable searches' proscribed by the text of the Fourth Amendment."[9] In developing this doctrine, the Court has adopted a broad definition of the term "open fields," expanding it to include "any unoccupied or undeveloped area outside of the curtilage."[10] The property "need be neither 'open' nor a 'field' as those terms are used in common speech," and it may be a thickly wooded area.[11]

In our view, there is something odious about the government in a free country intruding upon privately owned property without a warrant, consent, or exigent circumstances.[12] But in *Oliver v. United States*, the Supreme Court concluded that "an individual has no

---

[4] See id.; *Gravley v. State*, 181 Ga. App. 400, 403 (352 SE2d 589) (1986).

[5] *Payton v. New York*, 445 U. S. 573, 601 (100 SC 1371, 63 LE2d 639) (1980). See also *Pickens v. State*, 225 Ga. App. 792, 794 (1) (b) (484 SE2d 731) (1997) ("[P]hysical entry of the home is the chief evil against which the wording of the Fourth Amendment is directed.") (citation and punctuation omitted).

[6] (Punctuation omitted.) *Olson v. State*, 166 Ga. App. 104, 105 (1) (303 SE2d 309) (1983). See also *Kelley v. State*, 146 Ga. App. 179, 182-183 (245 SE2d 872) (1978).

[7] (Punctuation omitted.) *United States v. Dunn*, 480 U. S. 294, 300 (107 SC 1134, 94 LE2d 326) (1987). See also *Gordon v. State*, 277 Ga. App. 247, 249 (626 SE2d 214) (2006).

[8] See *Oliver*, supra at 178-179.

[9] (Punctuation omitted.) *Dunn*, supra at 303-304.

[10] Id. at 304.

[11] Id. See also *Oliver*, supra at 180, n. 11; *State v. Clark*, 263 Ga. App. 480, 484-485 (588 SE2d 254) (2003).

[12] See, e.g., *State v. Gray*, 285 Ga. App. 124, 126 (1) (645 SE2d 598) (2007) (police cannot enter "a person's home or its curtilage without a warrant absent consent or a showing of exigent circumstances").

legitimate expectation that open fields will remain free from warrantless intrusion by government officers."[13] According to the *Oliver* majority, this is true even if the landowner takes steps to protect his privacy, such as by posting "No Trespassing" signs or erecting a fence.[14] Although bound by the *Oliver* holding, we — like the *Oliver* dissenters — see "no reason why a government official should not be obliged to respect [these] unequivocal and universally understood manifestations of a landowner's desire for privacy."[15] And we question how the *Oliver* majority could have concluded that an expectation of privacy in such property is unreasonable.[16]

The primary genesis for *Oliver* lies in *Hester v. United States*, an extremely abbreviated decision that approved government entry onto private land by stating, without supporting analysis, that "the special protection accorded by the Fourth Amendment to the people in their 'persons, houses, papers and effects,' is not extended to the open fields."[17] The only citation for this statement is a vague reference to Blackstone. While Blackstone enjoys a hallowed position in English jurisprudence, he should not govern Fourth Amendment reasoning; our history is different.

After citing *Hester*'s "open fields" doctrine, the *Oliver* Court further expanded the concept to property on which a landowner has taken steps to ensure privacy, broadly concluding that "an individual may not legitimately demand privacy for activities conducted out of doors in fields, except in the area immediately surrounding the home."[18] What is the basis for *Oliver*'s limited view of privacy? What has deeper roots in our tradition of privacy than private ownership? Indeed, respect for private property is so ingrained in our jurisprudence that it enjoys special protections.[19]

In this case, Morse took extensive steps to keep others from the property he owned. The right to own is the right to exclude.[20] To

---

[13] Supra at 181.

[14] See id. at 182.

[15] Id. at 194-195 (Marshall, J., Brennan, J., Stevens, J., dissenting).

[16] See id. at 177.

[17] 265 U. S. 57, 59 (44 SC 445, 68 LE 898) (1924).

[18] See *Oliver*, supra at 177-178.

[19] See, e.g., OCGA §§ 16-7-21 (defining offense of criminal trespass); 51-9-1 (creating tort action for unlawful interference with right of enjoyment of private property); 51-9-3 (cause of action lies for wrongful interference with possession of land); 51-9-4 (authorizing tort action for trespass); 22-1-8 (requiring that taking of private property for public use follow statutory requirements governing eminent domain); see also *Pruden v. Love*, 67 Ga. 190, 195 (4) (1881) (indicating that the law protects "the three great absolute rights of all the people, personal liberty, personal security and private property").

[20] See, e.g., OCGA § 16-7-21 (b) (2) (a person commits the offense of criminal trespass by entering land without authority after receiving notice from the landowner forbidding such entry).

conclude — as we must under *Oliver* — that he had no reasonable "expectation of privacy" strains credulity. Our Fourth Amendment analysis should focus on protecting against unwanted governmental intrusion. As explained by the *Oliver* dissenters, "[t]he Fourth Amendment, properly construed, embodies and gives effect to our collective sense of the degree to which men and women, in civilized society, are entitled 'to be let alone' by their governments."[21]

The far-reaching "open fields" doctrine threatens the integrity of the Fourth Amendment[22] and turns the concept of reasonable privacy expectation on its head. Nevertheless, stare decisis compels us to apply the doctrine in this case. The record shows that the Henry County property consisted not of Morse's dwelling, but of the area surrounding new, unfinished, and uninhabited construction. While the structure may have been on its way to becoming a constitutionally protected home, it was not a "dwelling" under the Fourth Amendment, nor did it have protected curtilage.[23] And under governing case law, Morse's efforts to maintain his privacy through fences and signs did not afford the property Fourth Amendment protection.[24] Pursuant to *Oliver*, the property fell within the "open fields" doctrine, and the officers' entry was authorized.[25]

Once the officers were lawfully on Morse's property, their examination of the machinery was proper.[26] The Butts County deputy testified that he observed the serial number on the front portion of the trailer without having to manipulate the trailer in any way. Likewise, the second officer testified that he could readily see that the metal plate containing the Bobcat's VIN had been removed from the rear of the machine. "A police officer may seize what is in plain sight if, as

---

[21] *Oliver,* supra at 197 (dissent).

[22] See *Coolidge v. New Hampshire*, 403 U. S. 443, 454 (91 SC 2022, 29 LE2d 564) (1971) ("[I]llegitimate and unconstitutional practices get their first footing ... by silent approaches and slight deviations from legal modes of procedure. . . . It is the duty of courts to be watchful for the constitutional rights of the citizen, and against any stealthy encroachments thereon.") (punctuation omitted).

[23] See *Olson*, supra at 105-106. Compare *Kelley*, supra at 182-183 (inhabited tent constituted dwelling worthy of protection under the Fourth Amendment).

[24] See *Dunn*, supra at 304 (no constitutional violation occurred when officers crossed over property owner's perimeter fence and several interior fences and peered into barn); *Oliver*, supra at 179 ("It is not generally true that fences or 'No Trespassing' signs effectively bar the public from viewing open fields," and any expectation of privacy thereby created is unreasonable); *Clark*, supra at 485-486 (even if officers' conduct constituted a trespass under common law, entry onto property did not violate Fourth Amendment); *Gravley*, supra at 404 ("The mere fact ... that the homeowner makes every conscious effort to seclude and protect the property by placing 'No Trespass' signs, enclosing with a fence, or secluding in a wooded area, will not shelter criminal activity nor protect that activity under the Fourth Amendment.").

[25] See *Oliver*, supra at 178-181; see also *Dunn*, supra at 303-304.

[26] See *State v. Nichols*, 160 Ga. App. 386 (287 SE2d 53) (1981).

here, he is in a place where he is constitutionally entitled to be."[27] Observations made from such vantage point also were lawfully considered as part of the search warrant application.[28] The trial court, therefore, properly denied Morse's motion to suppress the contraband found on his property.

2. Morse argues that his pretrial statements to police were fruits of an illegal arrest that should have been excluded from evidence. Morse, however, failed to object to the admission of his statements on this ground during the suppression hearing or at trial,[29] and he thus has waived this issue on appeal.[30]

*Judgment affirmed. Blackburn, P. J., and Bernes, J., concur.*

DECIDED NOVEMBER 1, 2007 —
RECONSIDERATION DENIED DECEMBER 4, 2007 — ▉

*Ricky W. Morris, Jr.*, for appellant.
*Tommy K. Floyd, District Attorney, Alicia C. Gant, Thomas R. McBerry, Assistant District Attorneys*, for appellee.

---

[27] (Punctuation omitted.) Id.

[28] See *Dunn*, supra at 305.

[29] No evidence was presented at trial. Instead, Morse reserved his objection to the trial court's suppression ruling, but stipulated to the facts necessary to find him guilty.

[30] See *Maxwell v. State*, 285 Ga. App. 685, 687-688 (647 SE2d 374) (2007); *Williams v. State*, 270 Ga. App. 480, 481-482 (606 SE2d 671) (2004). At the suppression hearing, the parties presented evidence and argument on whether Morse consented to the officer's entry onto his property, and the trial court ultimately determined that he did not consent. To the extent Morse's enumeration of error relates to his alleged statement of consent, we fail to see how Morse was harmed by the trial court's consideration of this statement. See *Watson v. State*, 264 Ga. App. 41, 43 (2) (589 SE2d 867) (2003) ("Harm as well as error must be affirmatively shown by the record to obtain reversal.").