**THIRD DIVISION**
**DILLARD, P. J.,**
**GOBEIL and HODGES, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**October 25, 2019**

# In the Court of Appeals of Georgia

A19A1623. THE STATE v. NEWSOME.

GOBEIL, Judge.

Cameron Steele Newsome was charged with theft by receiving stolen property and numerous drug-related offenses after law enforcement found stolen property and evidence of a methamphetamine laboratory during a search of Newsome's apartment. The trial court granted Newsome's motion to suppress the evidence from the search, concluding that the information upon which the search warrants were based was obtained by an unlawful intrusion into the home's curtilage. On appeal, the State contends that the trial court misapplied the law governing the circumstances under which law enforcement may approach a home's rear door in the conduct of a warrantless knock and talk procedure. For the reasons that follow, we affirm.

When reviewing a trial court's ruling on a motion to suppress, we must follow three fundamental principles:

> First, when a motion to suppress is heard by the trial judge, that judge sits as the trier of facts. The trial judge hears the evidence, and his findings based upon conflicting evidence are analogous to the verdict of a jury and should not be disturbed by a reviewing court if there is any evidence to support them. Second, the trial court's decision with regard to questions of fact and credibility must be accepted unless clearly erroneous. Third, the reviewing court must construe the evidence most favorably to the upholding of the trial court's findings and judgment. These principles apply equally whether the trial court ruled in favor of the State or the defendant.

*Phillips v. State*, 338 Ga. App. 231, 231 (789 SE2d 421) (2016) (citation, punctuation and emphasis omitted). We conduct a de novo review of the trial court's application of the law to the undisputed facts. *State v. Mohammed*, 304 Ga. App. 230, 230 (695 SE2d 721) (2010).

Construed most favorably to the trial court's findings and judgment, the evidence shows that in June 2016, authorities in Oglethorpe County were investigating a report of stolen property. The stolen items consisted of various tools, including a bench grinder, a welder, a tire mounting machine, a belt sander, and a drill. The victim's daughter reported the incident to law enforcement initially, but she

2

later admitted that she and her boyfriend gave the tools to Newsome in exchange for drugs. An investigator with the Oglethorpe County Sheriff's Office, Michael Mathews, tracked Newsome's location to a residence in Clarke County. Mathews conceded that the information he obtained from the victim's daughter was insufficient to support the issuance of a search warrant, but he traveled to Newsome's apartment to question Newsome about the tools and further the investigation through the use of a knock and talk procedure.

When Mathews arrived at the apartment on June 22, 2016, he knocked on the front door several times, but received no answer.[1] Mathews testified that, when conducting a knock and talk procedure, his usual practice is to knock on the back door if no one answers the front door "because some people have rooms where they're just in the back of the house and they can't hear the front of the house." He then walked to the back of the residence.

Newsome's apartment is located on the second floor of a quadplex, a building which includes three other apartments. The front door of the apartment is accessible by walking through a common area. The back yard of the apartment is not connected

---

[1] Newsome was not home when Mathews attempted to question him at the apartment. He arrived at the apartment later that day while officers were conducting a search pursuant to a warrant.

to the front of the apartment by a sidewalk or driveway, and is accessible only by walking through the grass. Newsome's rear door is located on a second-floor deck, which is surrounded by railing, and separated from the adjacent apartment by a wooden privacy partition. The deck can be reached by climbing a flight of stairs which leads to Newsome's apartment only.

Mathews ascended the flight of stairs and, upon reaching the back deck, observed a pair of pliers, which "spark[ed] [Mathews's] interest" because the crime involved the theft of tools. The rear doors of Newsome's apartment are made of glass. As he knocked on the back door, Mathews looked through the glass and observed grinders and other tools on the floor in the apartment. Mathews took pictures of the tools and sent them to the victim, who confirmed that some of the tools belonged to him.

Investigator Mathews immediately contacted a member of the Athens-Clarke County Sheriff's Department, Sergeant David Wortham, and asked him to prepare a search warrant for the stolen property. Law enforcement then arrived at Newsome's residence to execute the search warrant. Once inside, they discovered additional tools and observed indications that Newsome was manufacturing methamphetamine. Wortham then obtained a second search warrant for the methamphetamine-related

contraband, and officers discovered additional evidence indicative of a methamphetamine lab in Newsome's apartment.

Newsome moved to suppress the evidence seized in his home, including any fruit of the illegal search and seizure.[2] The trial court held a hearing on the motion, at which it heard testimony from the investigating officers and viewed photographs depicting the exterior of Newsome's apartment complex. The court granted the motion, finding that Mathews's presence at Newsome's back door was not authorized because there was no evidence that the back door was treated as a public entrance. Moreover, the court concluded that Mathews's approach to the rear door, after receiving no response at the front door, was unauthorized because the officer had no reason to believe that the apartment was occupied, and thus had no reason to believe that an attempt to knock on the back door would have been more successful or welcome. The State now appeals the ruling on the motion to suppress.

The Fourth Amendment to the United States Constitution protects against "unreasonable searches and seizures[.]" U.S. Const. Amend. IV. The protections

---

[2] Officers discovered several tablet computers in Newsome's apartment during their initial search. Newsome's charge of theft by receiving stolen property relates to the tablets. There is no evidence in the record that Newsome was charged with a crime in connection with the stolen tools.

afforded by the Fourth Amendment extend to the home and its curtilage. *State v. Gallup*, 236 Ga. App. 321, 323 (1) (b) (512 SE2d 66) (1999). Curtilage has been described as "the area immediately surrounding a dwelling house," and the extent of the curtilage "is determined by factors that bear upon whether an individual reasonably may expect that the area in question should be treated as the home itself." *United States v. Dunn*, 480 U. S. 294, 300 (II) (107 SCt 1134, 94 LE2d 326) (1987). A warrantless search of the curtilage violates the Fourth Amendment unless an exception to the warrant requirement applies. See *Leon-Velaquez v. State*, 269 Ga. App. 760, 761 (1) (605 SE2d 400) (2004) ("Generally, a law enforcement officer's entry into a home without a search warrant and without consent or exigent circumstances constitutes an unjustified, forcible intrusion that violates the Fourth Amendment.") (footnote omitted). However, "the plain view doctrine authorizes seizure of illegal or evidentiary items visible to a police officer only if the officer[]" is lawfully present at the location where the seizure occurred. *State v. Schwartz*, 261 Ga. App. 742, 745 (2) (583 SE2d 573) (2003) (citation omitted).

Here, the State does not contest that the back door and deck areas of Newsome's apartment are part of the home's curtilage. Further, it is undisputed that Mathews did not have a search warrant when he approached Newsome's residence.

6

Rather, the State contends that Mathews was lawfully on the back deck (as a prerequisite to his plain view observation of the stolen tools) as part of his knock and talk investigation after receiving no response at the front door. Therefore, the State argues, the trial court erred in granting Newsome's motion to suppress. We disagree.

Warrantless searches of the curtilage "are per se unreasonable under the Fourth Amendment–subject only to a few specifically-established and well-deliniated exceptions." *Katz v. United States*, 389 U. S. 347, 357 (88 SCt 507, 19 LE2d 576) (1967). One such exception is a "knock and talk" procedure, which involves law enforcement approaching a home or residence for the purpose of investigating a crime or making inquiries of the occupant. See *Kentucky v. King*, 563 U. S. 452, 466-467 (III) (B) (131 SCt 1849, 179 LE2d 865) (2011) ("[T]he police may wish to speak to the occupants of a dwelling before deciding whether it is worthwhile to seek authorization for a search. They may think that a short and simple conversation may obviate the need to apply for and execute a warrant."). The use of a knock and talk technique as an investigatory tool does not violate the Fourth Amendment, so long as "police utilize normal means of access to and egress from the house[.]" *Cupe v. State*, 327 Ga. App. 642, 646 (760 SE2d 647) (2014). The rationale underlying the knock and talk exception is that there is no reasonable expectation of privacy subject

7

to Fourth Amendment protection where the public is welcome. See *State v. Zackery*, 193 Ga. App. 319, 320 (387 SE2d 606) (1989) (a police officer makes a "valid intrusion" upon property when "such an officer is merely taking the same route as would any guest or other caller.") (citation omitted). Whether a person has a reasonable expectation of privacy in a particular area of the home's curtilage, and thus the extent to which a law enforcement officer may approach the back door of a home without a warrant, depends upon the facts and circumstances of each case. See *Ohio v. Robinette*, 519 U. S. 33, 39 (117 SCt 417, 136 LE2d 347) (1996) (in examining the totality of the circumstances to determine reasonableness, our analysis "eschewe[s] bright-line rules, instead emphasizing the fact specific nature of the reasonableness inquiry").

We previously have held that police may approach a side or rear door of a residence under certain circumstances, such as where access to the front door is blocked, or where the finder of fact could have concluded that the rear door was used as a public means of access. See, e.g., *Zackery*, 193 Ga. App. at 320 ("a police officer who is unable to approach the front door of a residence and tries to knock upon a side door only makes a 'valid intrusion' upon the property"); *Cupe v. State*, 327 Ga. App. at 646 (1) ("although the police had elected to talk with [the defendant] at his back

8

door, as opposed to walking around to the front door, a trier of fact could conclude that the rear of [the defendant's] property and the back door were normal means of access to and egress from the house[]"). On the other hand, we have, under different circumstances, held that an officer's approach to a home's rear door violates the Fourth Amendment. Compare *Arp v. State*, 327 Ga. App. 340, 343 (1) (759 SE2d 57) (2014) (officers' entry into backyard and positioning themselves immediately outside the back door, without a search warrant, was not authorized absent exigent circumstances; back door and window were not visible or in plain view from street or from anywhere the officers were authorized to be upon arriving at the home, and there was no evidence that the back door was treated as a public entrance) with *Zackery*, 193 Ga. App. at 319-320 (no Fourth Amendment violation when officers approached side door of home and observed marijuana; officers were lawfully present at side door because front door was blocked by lawn mower and apparently not in use).

In its ruling below, the trial court focused its analysis on whether the back door was a public entrance for purposes of the Fourth Amendment. "[A]partment residents have a reasonable expectation of privacy in the curtilage surrounding their apartment." *Espinoza v. State*, 265 Ga. 171, 173 (2) (454 SE2d 765) (1995). The

9

record in this case supports the trial court's conclusion that Mathews did not have an implied license to enter the back deck area. There is no evidence that the front door was inaccessible, or that Newsome treated the back door as a public entryway. Nor is there evidence that the back door and deck area "were visible or in plain view from the street or from anywhere the officers were authorized to be upon arriving at the home." *Arp*, 327 Ga. App. at 343 (1). "The absence of a fence enclosing [Newsome's] yard is not conclusive, particularly since he rented the property[, and] his lack of exclusive control over the land [does not] eliminate his expectation of privacy." *Espinoza*, 265 Ga. at 173-174 (2). The back door and deck area are surrounded by railing, and a wooden privacy partition separates Newsome's deck from the adjacent property. The back deck and door are not visible from the street in front of the house, and there is no sidewalk or driveway connecting the front and back of the apartment. The only means of access to and egress from the second-story rear door is via a staircase leading only to Newsome's apartment. Under these circumstances, the trial court did not err in concluding that Newsome had a reasonable expectation of privacy in the back door of his residence. See id. at 173-174 (2) (affirming trial court's grant of motion to suppress because defendant had a reasonable expectation of privacy in

10

the yard outside the driveway leading to his apartment and contraband was discovered in an area where visitors to the duplex would not be expected to go).

Additionally, the trial court's conclusion that the officer's approach to the rear door, after receiving no response at the front door, was unreasonable given the small size of the apartment and the lack of evidence that it was occupied at the time Mathews attempted to question Newsome, is not clearly erroneous. See *State v. Lyons*, 167 Ga. App. 747, 747 (307 SE2d 285) (1983) (officers' approach to the back door of a home, after receiving no response at the front door, was permissible in part because it was "[b]ased upon their belief that the residence was occupied). Therefore, the trial court was authorized to conclude that the officer was not entitled to enter the curtilage in the manner in which he did, and that he was not in a place that he was authorized to be when he viewed the stolen tools. Accordingly, the trial court did not err in granting Newsome's motion to suppress.

*Judgment affirmed. Hodges, J., concurs. Dillard, P. J., concurs fully and specially.*

A19A1623. THE STATE v. NEWSOME.

DILLARD, Presiding Judge, concurring fully and specially.

I agree with the majority that the officer's approach to the rear door of Newsome's apartment—after receiving no response at the front door—was unreasonable under both the United States and Georgia constitutions,[1] and thus the trial court was right to grant the motion to suppress.[2] Even so, I write separately to

---

[1] *See* U. S. Const. Amend. IV ("The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated . . . ."); Ga. Const. Art. 1, § 1, ¶ XIII ("The right of the people to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures shall not be violated . . . ."); *Olevik v. State*, 302 Ga. 228, 234 (2) (b) (806 SE2d 505) (2017) ("The Fourth Amendment to the United States Constitution and Paragraph XIII of the Georgia Constitution protect against unreasonable searches and seizures.").

[2] I concur fully in the majority's thoughtful and well-reasoned opinion. As a result, it may be cited as binding precedent. *See* Court of Appeals Rule 33.2 (a) (1).

emphasize that—in addition to running afoul of the rightly maligned "reasonable expectation of privacy" test from *Katz v. United States*[3]—the officer also violated our federal and state constitutions because he obtained information against Newsome by "physically intruding" on his home and trampling upon his property rights.[4] As Justice Scalia aptly noted for the majority in *Florida v. Jardines*,[5] "when the

---

[3] 389 U.S. 347 (88 SCt 507, 19 LE2d 576) (1967). Notwithstanding my increasingly Burkean tendencies as a jurist, I share Justice Thomas's view that the *Katz* test has "no basis in the text or history of the Fourth Amendment," "invites courts to make judgments about policy, not law," and that "[u]ntil we confront the problems with this test, *Katz* will continue to distort Fourth Amendment jurisprudence." *Carpenter v. United States*, ___ U.S. ___ (138 SCt 2206, 2236, 201 LE2d 507) (2018) (Thomas, J., dissenting); *id*. at 2238 (II) ("By defining 'search' to mean 'any violation of a reasonable expectation of privacy,' the *Katz* test misconstrues virtually every one of [the words contained in the Fourth Amendment]."); *see also id*. at 2264 ("*Katz's* problems start with the text and original understanding of the Fourth Amendment . . . . The Amendment's protections do not depend on the breach of some abstract 'expectation of privacy' whose contours are left to the judicial imagination. Much more concretely, it protects your 'person,' and your 'houses, papers, and effects.' Nor does your right to bring a Fourth Amendment claim depend on whether a judge happens to agree that your subjective expectation to privacy is a 'reasonable' one. Under its plain terms, the Amendment grants you the right to invoke its guarantees whenever one of your protected things (your person, your house, your papers, or your effects) is unreasonably searched or seized. Period.") (Gorsuch, J., dissenting). *See generally* Harvey A. Schneider, *Katz v. United States: The Untold Story*, 40 MCGEORGE L. REV. 13, 18-20 (VII) (2009) (explaining how the *Katz* test developed).

[4] *Florida v. Jardines*, 569 U.S. 1, 5 (II) (133 SCt 1409, 185 LE2d 495) (2013).

[5] *Id.*

2

Government obtains information by physically intruding on persons, houses, papers, or effects, a search within the original meaning of the Fourth Amendment has undoubtedly occurred."[6] And as in *Jardines*, this bedrock constitutional principle makes this case relatively straightforward.

Here, the officer was "gathering information" in an area belonging to Newsome and "immediately surrounding his house—in the curtilage of the house, which we

---

[6] *Id.* (punctuation omitted); *see Grady v. North Carolina*, __ U.S. __, __ (135 SCt 1368, 1370, 191 LE2d 459) (2015) (per curiam) (noting that in *United States v. Jones*, 565 U.S. 400 (132 SCt 945, 181 LE2d 911) (2012), "[w]e stressed the importance of the fact that the Government had 'physically occupied private property for the purpose of obtaining information.' Under such circumstances, it was not necessary to inquire about the target's expectation of privacy in his vehicle's movements in order to determine if a Fourth Amendment search had occurred. [When] . . . the Government obtains information by physically intruding on a constitutionally protected area, such a search has undoubtedly occurred" (punctuation & citation omitted)); *see also United States v. Jones*, 565 U.S. 400, 404-05 (II) (A) (132 SCt 945, 181 LE2d 911) (2012) ("It is important to be clear about what occurred in this case: The Government physically occupied private property for the purpose of obtaining information. We have no doubt that such a physical intrusion would have been considered a 'search' within the meaning of the Fourth Amendment when it was adopted . . . . The text of the Fourth Amendment reflects its close connection to property, since otherwise it would have referred simply to 'the right of the people to be secure against unreasonable searches and seizures'; the phrase 'in their persons, houses, papers, and effects' would have been superfluous. Consistent with this understanding, our Fourth Amendment jurisprudence was tied to common-law trespass, at least until the latter half of the 20th century." (punctuation & citations omitted)).

have held enjoys protection as part of the home itself."[7] In doing so, the officer "gathered that information by physically entering and occupying the area to engage in conduct not explicitly or implicitly permitted by the homeowner."[8] Put another way, the officer's investigation "took place in a constitutionally protected area"[9] and was "accomplished through an unlicensed physical intrusion"[10] when he stepped off of the "public thoroughfares"[11] and entered the curtilage of Newsome's home.[12] This, the government may not do.[13] And because Newsome's Fourth Amendment rights "do

---

[7] *Jardines*, 569 U.S. at 5-6 (II).

[8] *Id.* at 6 (II); *see Grady*, 135 SCt at 1370 (relying on *Jardines* to explain that a search occurs when police "gathered information by physically entering and occupying the curtilage of the house to engage in conduct not explicitly or implicitly permitted by the homeowner," and holding that a search also occurs when police attach "a device to a person's body, without consent, for the purpose of tracking that individual's movements" (punctuation & citation omitted)).

[9] *Jardines*, 569 U.S. at 7 (II) (B).

[10] *Id.*

[11] *Id.*

[12] *See id.* at 11-12 (III) ("The government's use of trained police dogs to investigate the home and its immediate surroundings is a 'search' within the meaning of the Fourth Amendment.").

[13] *See id.* at 11-12 (III) (holding that use of drug-sniffing dog on homeowner's porch was a "search" within the meaning of the Fourth Amendment); *see also Morse v. State*, 288 Ga. App. 725, 727 (1) (655 SE2d 217) (2007) ("In [this Court's] view, there is something odious about the government in a free country intruding upon

4

not rise or fall with the *Katz* formulation,"[14] it is my view that the "traditional property-based understanding of the Fourth Amendment"[15] is a more appropriate basis to ground our decision.[16]

---

privately owned property without a warrant, consent, or exigent circumstances.").

[14] *Jones*, 565 U.S. at 406 (II) (A).

[15] *Jardines*, 569 U.S. at 11 (III); *see Bunn v. State*, 153 Ga. App. 270, 273 (2) (265 SE2d 88) (1980) ("Although[,] [under *Katz*,] property concepts are no longer controlling in application of Fourth Amendment rights, we will not discard them entirely, but will consider them in conjunction with the totality of all the circumstances surrounding claimed violations of Fourth Amendment rights. Appellate courts have consistently held whenever government agents enter upon the curtilage they necessarily intrude upon the individual's reasonable expectation of privacy." (citation omitted)).

[16] *See Jardines*, 569 U.S. at 11 (III) ("The *Katz* reasonable-expectations test has been *added to*, not *substituted for*, the traditional property-based understanding of the Fourth Amendment, and so is unnecessary to consider when the government gains evidence by physically intruding on constitutionally protected areas." (punctuation omitted)); *Jones* 565 U.S. at 409 (II) (A) ("[A]s we have discussed, the *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test."); *Mobley v. State*, __ Ga. __, No. S18G1546, 2019 WL 5301819, at *5 (2) (Oct. 21, 2019) ("[A]s the United States Supreme Court has made perfectly clear, 'the *Katz* reasonable-expectation-of-privacy test has been *added to*, not *substituted for*, the common-law trespassory test.' If either standard is satisfied, the government act in question generally will amount to a search that implicates the Fourth Amendment." (citations omitted)); *see also Jardines*, 569 U.S. at 11 (III) ("One virtue of the Fourth Amendment's property-rights baseline is that it keeps easy cases easy."); *Mobley*, 2019 WL 5301819, at *5 (2) ("For much of our history, the Fourth Amendment was understood to be concerned only with government trespasses upon the rights of individuals under the common law to be secure in their 'persons, houses, papers, and effects.' Accordingly, to determine

5

whether a government act amounted to a search, American courts traditionally asked whether the act was to obtain information by physically intruding on a constitutionally protected area."); *Mobley v. State*, 346 Ga. App. 641, 650-51 (816 SE2d 769) (2018) (Dillard, C.J., concurring specially) ("[U]nder a 'property-based' theory of the Fourth Amendment, the Supreme Court of the United States has held that law enforcement's brief physical intrusion into a vehicle constitutes a search within the meaning of the Fourth Amendment. As a result, arguments like these may vindicate Fourth Amendment interests even [when] *Katz* arguments do not."), *reversed by Mobley*, __ Ga. __, No. S18G1546, 2019 WL 5301819 (Oct. 21, 2019).